IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE CALETZ, a Special Administrator of the Estate of CRYSTAL COLON, a minor, Deceased, STEPHANIE CALETZ, Individually, MARIO CALETZ, Individually, STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of BRANDON CALETZ, a minor, and STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of JOEL CALETZ, a minor; SHANE EVANS, and SHANNON EVANS,<br><br>           Plaintiffs,<br><br>vs.<br><br>JESSE BLACKMON, ROBERT LACHOWSKI, TRANSPORT CARRIERS, INC., and AMERICAN SHIPPING COMPANY,<br><br>           Defendants. | Case No.: 99 C 8146<br><br>Consolidated with No.: 03 C 318<br><br>Magistrate Judge Mason |

## DEFENDANTS JESSE BLACKMON AND TRANSPORT CARRIERS, INC.'S POST-TRIAL MOTION

NOW COME defendants, JESSE BLACKMON and TRANSPORT CARRIERS, INC. (collectively Blackmon), by their attorneys, JOHN W. PATTON, JR., KEVIN J. ROSE and PATTON & RYAN LLC, and PAULA M. CARSTENSEN, PAUL V. ESPOSITO and CLAUSEN MILLER P.C., and pursuant to Fed. R. Civ. P. 50(b), 59(a) and 59(e) move for an Order vacating the verdict of August 31, 2006 and judgment entered on September 1, 2006 and docketed on September 6, 2006 and : (a) granting judgment as a matter of law in their favor and against all plaintiffs; alternatively, (b) granting a new trial as to liability and damages regarding all claims; (c) granting new trial on damages only regarding all claims; (d) granting remittiturs reducing the judgments entered for plaintiffs to the following amounts: Crystal Colon (wrongful

death) — $2,550,000; Crystal Colon (survival) — $50,000; Stephanie Caletz — $75,000; Mario Caletz — $75,000; Brandon Caletz — $225,000; Joel Caletz — $25,000; Shane Evans — $1,250,000; Shannon Evans — $250,000; (e) granting judgments on the counterclaims of Blackmon and of Lachowski/ American based on the allocation of fault made by the jury; and (f) granting such other and further relief as this Court deems just.

In support hereof, Blackmon states:

### I. MOTION FOR JUDGMENT AS A MATTER OF LAW

1. Assuming *arguendo* that there was evidence of Blackmon's negligence, that negligence merely provided a condition for the accident and was not a proximate cause of the accident. In *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257, 720 N.E.2d 1068 (1999), the Supreme Court stated:

> Indeed, if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. (citations omitted).

In *Galman*, defendant illegally parked his truck at mid-block. Plaintiff's decedent, a pedestrian, crossed in front of defendant's truck in violation of an ordinance on crossing at mid-block. Plaintiff's decedent was killed by a driver who claimed that the defendant's truck prevented her from swerving to avoid the accident. The Court found that defendant's truck was not the proximate cause of the accident. It was not reasonably foreseeable that decedent would violate her duty to cross within a designated crosswalk. *Id*. at 260-61.

It is undisputed here that Blackmon did not hit anyone and was trying to move his truck. Assuming that he negligently blocked travel, that conduct merely created a roadway condition with which other motorists had to deal. For Lachowski's purposes, it was no different than if traffic had been lawfully stopped because of a high volume of cars. Lachowski was always

2

required drive with such control that he could stop his truck in his own lane before striking stopped traffic in front of him. Lachowski could not. Because Lachowski could not see around the curve, he was negligent for failing to significantly reduce his speed. It was not reasonably foreseeable that Lachowski would drive too fast around a blind curve, particularly when Lachowski should have expected stopped cars. After all, he was driving the Skyway and the Ryan.

   3.   There is no evidence that Blackmon was guilty of willful and wanton misconduct.

> A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

*Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 273, 641 N.E.2d 402 (1994). It requires:

> . . . a course of action which [shows ***actual or deliberate intention to harm*** *] [or which, if not intentional,] [shows an utter **indifference to or conscious disregard*** for (a person's own safety) (and) (the safety of others)].

IPI 14.01. The critical focus is not on the actor's conduct. It is on the mental state triggering his conduct. Plaintiffs needed evidence that Blackmon actually intended to injure people or at least had an "I don't care!" or "so what!" attitude after realizing others' position of peril. They needed to prove a mind set that, if not actually evil, was consciously reckless.

*Bartolucci v. Falleti*, 382 Ill. 168, 46 N.E.2d 980 (1943), is illustrative. Plaintiff passenger was injured when her car slid down an embankment. The accident happened at night on a gravel road slick with rain and ice. The road ran downhill and curved abruptly at the accident site. The jury returned a verdict for plaintiff. The Appellate Court reversed and entered judgment for defendant, which the Supreme Court affirmed. The Court stated that the mere

3

violation of a statutory speed limit does not constitute willful and wanton misconduct. *Id.* at 175. It rejected plaintiff's argument that defendants' driving too fast for conditions was willful and wanton:

> [Plaintiffs] argument is that this conclusion inevitably follows when consideration is given to defendant's familiarity with, and plaintiff's lack of knowledge of, the road; the darkness of the night; the wet and icy condition of the narrow, sloping thoroughfare, — making a nearly right-angled turn as it approached the bridge — and defendant's failure to decrease his speed of thirty to thirty-five miles an hour. Construing the evidence most favorable to plaintiff, together with all reasonable inferences arising therefrom, there is a conspicuous lack of proof (a) of any consciousness on the part of defendant that his conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty, or (c) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences. *Id.* at 175-76.

Here, plaintiffs offered no evidence that Blackmon actually intended to harm them or others. Neither did they offer evidence that Blackmon acted in utter indifference or conscious disregard for the safety of anyone. Plaintiffs merely showed that Blackmon swerved in rainy conditions. That conduct was negligent at worst, and actually not negligent at all. Blackmon testified that a pick-up truck traveling along his left side cut him off. Plaintiff Mario Caletz admitted that when the ramp travel area merged to one lane, a vehicle was on Blackmon's left side. There was no proof that at Blackmon's speed, Blackmon would have been unable to stop his truck before striking vehicles ahead of him. And in fact, Blackmon did not strike Caletz, Evans, or anyone else.

It was not enough for plaintiffs to prove that Blackmon knew his speed or knew that the road was wet and that visibility was poor. A driver unaware of such facts is likely driving blindfolded. If knowledge of those facts was enough to establish willful and wanton misconduct, the increase in willful and wanton claims would be exponential. A plaintiff must also prove a

4

willful and wanton mental state. *Bartolucci*, 308 Ill. at 175-76. No proof was offered on that mental state here. Blackmon is entitled to judgment on the Caletz plaintiffs' willful and wanton misconduct claim.

4. If plaintiffs offered any evidence of Blackmon's willful and wanton misconduct, such conduct merely provided a condition for the accident and was not a proximate cause of the accident.

## II. MOTION FOR NEW TRIAL ON ALL ISSUES

1. Blackmon incorporates their motion for judgment as a matter of law as this paragraph 1 of their new motion for a new trial as if fully set forth.

2. For the above reasons, the verdicts and judgments in favor of the Caletz plaintiffs and/or the Evans plaintiffs are contrary to law and against the manifest weight of the evidence.

3. The court erred by refusing to give Blackmon's special interrogatories on negligence and willful and wanton misconduct (Tr. 8/28/06 at 51) (Doc. No. 256). These special interrogatories were necessary to determine whether the jury's verdict for the Caletz plaintiffs and against Blackmon was based on negligence or willful and wanton misconduct. *Bartolucci*, 382 Ill. at 176.

Moreover, the willful and wanton claim infected the Evans' verdicts. The jury may have increased Blackmon's share of fault from a much smaller amount to 25% based on a determination that Blackmon was guilty of willful and wanton misconduct. Certainly, nothing prevented the jury from allocating a higher percentage to fault to Blackmon based on conduct found to be willful and wanton. At 25%, Blackmon became jointly and severally liable to both sets of plaintiffs, not just the Caletz plaintiffs. Absent the jury's explanation through special interrogatories, a new trial must be granted as to all plaintiffs.

5

4. The court erred by denying Blackmon's instruction No. 30 stating:

> If you find that a defendant's negligence or willful and wanton misconduct was 25 percent or more of the cause of a plaintiff's injuries, then that plaintiff may collect the entire amount of his or her judgment from that defendant, even though another defendant may have also been negligent. This is known as joint and several liability.
>
> However, if a defendant's negligence or willful and wanton misconduct was less than 25 percent of the cause of a plaintiff's injuries, then that plaintiff may only collect from that defendant the actual percentage of damages corresponding to that defendant's percentage of negligence or willful and wanton misconduct. This is known as several liability only.
>
> A defendant found to be negligent or guilty of willful or wanton misconduct will be jointly and severally liable for the full amount of a plaintiff's past and future medical and medically related expenses, regardless of that defendant's percentage of negligence or willful and wanton misconduct.

The court also erroneously denied Blackmon's alternate No. 31.

Through 735 ILCS §2-1117, the Illinois legislature modified the common law rule of joint and several liability. A minimally responsible tortfeasor (*i.e.*, less than 25%), has several liability only. *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 78, 783 N.E.2d 1024 (2002). With exception for medical expenses, a plaintiff may only collect from that tortfeasor an amount equaling his percentage of fault. *Id.* But if a tortfeasor's share of fault is 25% or more, its liability is joint and several. A plaintiff may collect the entire judgment from that tortfeasor, even amounts greatly exceeding its share.

When a plaintiff's comparative fault is at issue, Illinois courts routinely instruct juries on the legal effect of an allocation of fault to plaintiff. *E.g.*, IPI B11.06 (child's claim/parent's claim); B21.02, B21.02.01, B21.02.02, B21.03, B21.04, B21.05, B21.07 (burden of proof); B22.01 (*res ipsa loquitur*); B22.02 (burden of proof); B45.02 (verdict form). Juries learn that a plaintiff may not recover if his fault exceeds 50%. Armed with this knowledge, juries fashion

6

1078534.1

verdicts consistent with their intent. Defendants are entitled to the same treatment. Juries should be advised of the legal effect of an allocation of fault to defendants.

Blackmon's right to the instruction is an issue of first impression in Illinois. However, supreme courts in other states have ruled that it is proper to explain to a jury the legal effect of an allocation of defendants' fault. *Kaeo v. Davis*, 719 P.2d 387, 394-96 (Hawaii 1986); *Coryell v. Town on Pinedale*, 745 P.2d 883, 884-86 (Wyo. 1987); *Luna v. Shockey Sheet Metal & Welding Co.*, 743 P.2d 61, 63-65 (Idaho 1987); *DeCelles v. State Through Department of Highways*, 795 P.2d 419, 420-22 (Mont. 1990). Commentators have also recognized that the better-reasoned view and the weight of authority allow for juries to be instructed about the legal effects of their verdicts. C. Wright and A. Miller, *Federal Practice and Procedure*: Civil 2d §2509 (1995); Steven B. Hantler, et al., *Moving Toward The Fully Informed Jury*, Geo. J. L. & Pub. Pol'y, Vol. 3:21, 40-47 (2005); *DeCelles*, 795 P.2d at 420-21 (citing authorities). The authorities correctly reason that fully instructing juries minimizes erroneous speculation about the law and allows juries to fashion relief consistent with their desires.

The Seventh Circuit has not yet considered the precise issue involved here. As to special verdicts, the Court holds that it is appropriate, but not required, to instruct juries on the legal effect of their findings. *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 450 (7th Cir. 2000). But the Court also recognizes that in cases tried to special verdict, a jury's role is limited to making factual determinations. *United States v. Kim*, 111 F.3d 1351, 1362 (7th Cir. 1997). When a court uses general verdicts, a jury does much more; it applies the law to the facts. That is what happened here. Following the verdict, the Court merely rendered judgment on it. So the jury needed to know the legal effect of its fact finding in order to return a verdict true to its intent.

7

By refusing the instruction, the Court deprived the jury of important information. The error also prevented Blackmon from explaining to the jury why plaintiffs treated Blackmon's conduct as so much worse than the Lachowski/American conduct — both in terms of the nature and the percentage of Blackmon's alleged fault.

The error was particularly prejudicial because the jury allocated Blackmon only 25% fault — the bare minimum needed to impose joint and several liability. An informed jury may have reduced the allocation to Blackmon ever so slightly, yet enough to render Blackmon severally liable only plaintiffs. It is hard to believe that the jury finding Lachowski/American three times more at fault than Blackmon wanted plaintiffs to be able to collect everything from Blackmon.

5. The court abused its discretion by denying all of the relief requested in defendants' motion to bar suggestion of lump sum non-economic award during closing argument. The Third Circuit has imposed a *per se* rule barring such requests. *Waldorf v. Shuta*, 896 F.2d 723, 744 (3d Cir. 1990). The Second Circuit has strongly discouraged such arguments. *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). These courts have correctly reasoned that lump sum requests unfairly anchor a jury's expectations at the place set by counsel rather than by the evidence.

The Seventh Circuit ruling in *Waldron v. Hardwick*, 406 F.2d 86 (7th Cir. 1969), is not controlling. Technically, *Waldron* is distinguishable because it dealt with *per diem* closing arguments. But treating lump sum and *per diem* arguments as effectively identical, *Waldren* was decided at a time that jury awards had not made such a staggering leap. The non-economic *per diem* request in *Waldren* totaled $19,893. *Id.* at 88. The Caletz plaintiffs alone asked for

8

approximately $27 million in non-economic damages. The Evans family asked for approximately $10 million in non-economic damages.

This Court's cautionary instruction was not enough. Once plaintiffs' counsel request figures, the damage cannot be undone. The Court should have required plaintiffs to disclose their request in advance so that it could review them for excessiveness. Moreover, plaintiffs should have been required to disclose their fee arrangements. If an arrangement is contingent, a plaintiff's counsel has a financial incentive to request excessive damage amount: he will be paid a percentage of it. A jury should know the facts so that it may properly weight the validity of a request.

6. The court abused its discretion on allowing police officers Patrick O'Flaherty, Edward Goliak and Keith Lutz to testify as to their opinions that Blackmon's alleged fault was at the cause of the accident. None of the police officers observed the accident or performed a reconstruction following it.

7. The Court abused its discretion by not allowing Blackmon's attorney from questioning Blackmon about his memory problems. Medical testimony is not needed for a witness to speak about his own observations regarding his body and mind.

8. The Court abused its discretion by allowing Dr. Kahana to testify to her examination of Brandon Caletz perform the day before her trial testimony. The testimony about her findings was untimely under Rule 26(a).

8. The Court abused its discretion by restricting Blackmon's closing argument that Mario Caletz had given a statement to the police inconsistent with the police report. The argument was necessary in light of plaintiffs' argument that Blackmon's testimony was inconsistent with the police report.

9

### III. MOTION FOR NEW TRIAL AS TO DAMAGES ONLY

1.  Blackmon incorporates their motion for a new trial on all issues as paragraph 1 of this motion for a new trial on damages only as it fully set forth.

2.  The verdict and judgment for the Caletz plaintiffs are excessive as a matter of law.[1] Over Blackmon's objection, this Court gave instructions and verdict forms allowing those plaintiffs to recover damages for emotional distress (Pl. Inst. Nos. 10, 14, 32, 33, 34, 35, 36; Def. Inst. Nos. 20, 23, 35, 36, 37, 38, 39) (Doc. Nos. 244, 255). A party's mental suffering for his or her own injury is compensable under the element of "pain and suffering." *Wood v. Mobile Chemical Co.*, 50 Ill. App. 3d 465, 477, 365 N.E.2d 1087 (5th Dist. 1977); *McDaniel v. Terminal R.R. Association*, 302 Ill. App. 332, 350, 23 N.E.2d 785 (4th Dist. 1939). The Caletz plaintiffs received awards for pain and suffering. However, they were not entitled to additional awards for emotional distress. The Caletz plaintiffs did not file claims for the negligent or intentional infliction of emotional distress. See *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602 (1991); *Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380 (7th Cir. 1993). Nor did plaintiffs even allege emotional damages. Absent an appropriate claim and pleadings, they may not recover emotional damages.

Moreover, there was no evidence to support the inclusion of an emotional distress element on the verdict forms. Illinois law allows a plaintiff's recovery of emotional distress damages as a direct victim and/or a bystander. To recover as a direct victim, a plaintiff must show emotional damages proximately resulting from defendant's negligence *directed against*

---

[1] As shown below, by allowing the Caletz plaintiffs to seek damages for emotional distress, the Court effectively allowed them to amend their complaint to raise claims for intentional and/or negligent inflection of emotional distress. However, plaintiffs did not offer evidence as to such claims. So Blackmon is entitled to judgment as a matter of law under Rule 50(b) on those claims.

10

*him or her*. This distress need not manifest itself by physical symptoms. By contrast, to recover emotional distress damages as a bystander, a plaintiff must offer evidence that he or she: (1) was in the physical zone of danger; (2) had a reasonable fear for his or her own safety; and ***(3) experienced "physical injury or illness as a result of the emotional distress caused by the defendant's negligence."*** *Corgan*, 143 Ill. 2d at 303 quoting *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 555, 457 N.E.2d 1 (1983) (emphasis supplied). No Caletz plaintiff met either standard.

There is no evidence that any Caletz plaintiff suffered emotional distress as a direct victim of Blackmon's alleged fault. Plaintiffs did not offer any evidence about the alleged emotional distress of decedent, Joel Caletz, and Brandon Caletz. Although Mario and Stephanie Caletz testified, they did not offer evidence of emotional distress to themselves arising out of Blackmon's alleged fault directed against them. Moreover, plaintiffs did not offer medical testimony as to emotional distress and causation.

There is also no evidence that the Caletz plaintiffs experienced recoverable emotional distress damages as bystanders. They offered no evidence that they were in reasonable fear for their own safety as a result of the accident. But assuming otherwise, they did not offer any medical testimony or other evidence that they suffered "physical injury or illness as a result of the emotional distress caused by [defendants'] negligence." *Corgan*, 143 Ill 2d at 303.

Absent evidence of emotional distress, the Caletz plaintiffs only offered closing argument (Tr. 8/29/06 a.m. at 20-27). Closing argument is not evidence. Moreover, emotional distress felt by a Caletz plaintiff resulting from Crystal's death is not recoverable. Emotional distress is not compensable in a wrongful death action, nor is it a component of lost society. *Elliot v. Willis*, 92 Ill. 2d 530, 539, 442 N.E.2d 163 (1982); *Bullard v. Barnes*, 102 Ill. 2d 505, 514-15, 468 N.E.2d

1228 (1984). Allowing the Caletz plaintiffs to recover emotional distress damages resulting from Crystal's death through their individual claims erroneously permitted them to circumvent the law.

Assuming that plaintiffs offered evidence of compensable emotional distress, the jury's awards are still excessive (Crystal $55,000; Stephanie $3,500,000; Mario $1,400,000; Brandon $250,000; Joel $120,000). The evidence did not support those awards regardless of the Caletz plaintiffs' status as direct victims or bystanders. Moreover, the awards were likely motivated by the inappropriate willful and wanton misconduct claims brought against Blackmon.

3. The $4,290,000 verdict and judgment rendered in the wrongful death action are excessive as a matter of law because they include damages for Robert Colon. Over objection, this Court instructed the jury that Colon was a beneficiary who presumptively suffered a substantial pecuniary loss (Pl. Inst. Nos. 7, 12, 13, 16, 17, 20, 31; Def. Inst. Nos. 16, 18, 21, 22, 24, 25, 26, 33, 34, 35) (Doc. Nos. 244, 255). Actually, Colon was estranged from Crystal. By the time Crystal was six, there was contact "maybe a couple times a year (Tr. 8/23/06 p.m. at 28: Stephanie). "More often than not I had to call him" (*Id.*). If Stephanie visited relatives in Chicago she would call Colon "or try to find him" (*Id.*). He never contributed financial support for Crystal (*Id.* at 29). He skipped paternity and child support hearings (*Id.*). When he did send a card or letter, he gave phony return addresses (*Id.*). He stood up his own daughter on the days that he had agreed to visit her (*Id.*).

Because Illinois law prohibits the itemization of beneficiaries, the verdict does not reflect the amount of the award attributable to Colon's alleged pecuniary loss. Defendants submitted a special interrogatory as to Colon's estrangement, but the court refused it ( Tr. 8/28/06 p.m. at 51)

12

1078534.1

(Doc. No. 256). Because it is impossible to properly analyze the verdict without an answer to the special interrogatory, a new trial on wrongful death damages is also needed.

4. Additionally, a wrongful death verdict is excessive regarding the loss of society. Neither Joel nor Brandon Caletz enjoy a presumption of substantial pecuniary loss. *In re Estate of Finley*, 151 Ill. 2d 95, 104, 601 N.E.2d 699 (1992). Neither testified at trial as to their losses, and the Caletz plaintiffs did not offer any evidence on that issue. Because Illinois law prohibits the itemization of awards to beneficiaries, a new trial as to the damages on the wrongful death claim must be granted.

5. The non-economic awards to Shane Evans ($3,480,000) and Shannon Evans ($1,025,000) are excessive. Those awards are beyond the range of reasonableness for the type of injuries sustained by the Evans plaintiffs in light of the evidence. Additionally, the awards are likely explained by the passion and prejudice brought to bear against Blackmon through the groundless willful and wanton misconduct claim. Although the Caletz plaintiffs filed that claim, the prejudice spilled into the Evans' verdicts. Given the injuries and the Evans' recovery from them, their verdicts shock the conscience.

The Evans awards are also excessive because of the excessive awards to the Caletz plaintiffs. The jury likely awarded $5.0 million to the Evans plaintiffs because it had just awarded over $10 million to the Caletz plaintiffs. But the Caletz verdicts are excessive by at least $5.0 million because of the erroneous inclusion of emotional distress damages. Once those damages are excluded, the verdicts for the Caletz and Evans plaintiffs are approximately equal. Most likely, the jury did not intend to compensate the Caletz and Evans plaintiffs at the same level given their vastly different injuries. The Evans verdicts are excessive in light of the excessiveness of the Caletz verdicts.

## IV. MOTION FOR REMITTITURS

1.  Blackmon incorporates their motion for a new trial as to damages as paragraph 1 of their motion for remittitur as if fully set forth.

2.  For the above reasons, the verdicts are excessive. Blackmon requests remittiturs bringing the verdicts and judgments down to the following amounts: Crystal Colon wrongful death claim — $2,550,000; Crystal Colon survival claim — $50,000; Stephanie Caletz — $75,000; Mario Caletz — $75,000; Brandon Caletz — $225,000; Joel Caletz — $25,000; Shane Evans — $1,250,000; Shannon Evans — $250,000.

## IV. MOTION FOR JUDGMENTS ON THE COUNTERCLAIMS

1.  The judgment does not dispose of the respective counterclaims of Blackmon/Transport and Lachowski/American. Without the entry of judgment on those counterclaims, the judgment is not final.

2.  Blackmon asks this Court to amend its judgment of September 1, 2006 (docketed September 6, 2006) to include judgments on the counterclaims of Blackmon/Transport and Lachowski/American pursuant to the jury's allocation of fault of 25% to Blackmon/Transport and 75% to Lachowski/American.

## CONCLUSION

For the foregoing reasons, defendants JESSE BLACKMON and TRANSPORT CARRIERS, INC., move for the entry of an Order vacating the verdict and judgment and (a) granting judgment as a matter of law in their favor and against all plaintiffs; alternatively (b) granting a new trial as to liability and damages regarding all claims; (c) granting a new trial on damages only regarding all claims; (d) granting remittiturs reducing the judgments entered for plaintiffs to the following amounts: Crystal Colon (wrongful death) — _____; Crystal Colon

(survival) — _____; Stephanie Caletz — _____; Mario Caletz — _____; Brandon Caletz — _____; Joel Caletz — _____; Shane Evans — _____; Shannon Evans — _____;

(e) granting judgments on the counterclaim of Blackmon and of Lachowski/American based on the allocation of fault made by the jury; and (f) granting such other and further relief as this Court deems just.

Respectfully submitted,

| PATTON & RYAN LLC | CLAUSEN MILLER P.C. |
|---|---|
| By: s/John W. Patton, Jr.<br>John W. Patton, Jr. | By: s/Paul V. Esposito<br>Paul V. Esposito |

Paula M. Carstensen
Paul V. Esposito
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, IL 60603-1098
Telephone: (312) 855-1010
Fax (312) 606-7777

John W. Patton, Jr.
Kevin J. Rose
PATTON & RYAN LLC
One IBM Plaza
Suite 2900
Chicago, IL 60611
Telephone: (312) 261-5160
Fax: (312) 261-5161
*Attorneys for Defendants Jesse Blackmon and
   Transport Carriers, Inc.*

15

1078534.1