IN THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CALETZ, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 99 C 8146 |
| | ) | |
| TRANSPORT CARRIERS, INC., et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO THE POST-TRIAL MOTION

NOW COMES the Plaintiffs, Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, a minor, Deceased; Stephanie Caletz, Individually; Mario Caletz, Individually; Stephanie Caletz and Mario Caletz, as parents and next friends of Brandon Caletz, a minor; Stephanie Caletz and Mario Caletz as parents and next friends of Joel Caletz, a minor; Shane Evans and Shannon Evans; by and through their attorneys, Power Rogers & Smith P.C. and Spinak & Babcock, and hereby file their Response Brief to the Post-Trial Motion of Defendants, Jesse Blackmon, and Transport Carriers Inc., and in support thereof, states as follows:

On July 1, 1999, a multi-vehicle accident occurred on the entrance ramp to the Dan Ryan from the Skyway. As a result of that incident, Mario Caletz, Stephanie Caletz, Brandon Caletz and Joel Caletz were injured; Crystal Colon was killed; and Shane Evans was injured (the Plaintiffs). At trial, the jury returned a verdict in favor of the Plaintiffs against the Defendants Jesse Blackmon, (Blackmon) Transport Carriers Inc., (TCI) Robert Lachowski (Lachowski) and American Shipping & Packing Co. (ASP) in the amount of $15,443,093.80. (Exhibit 1). The jury further found that Blackmon and TCI were 25 percent at fault and Lachowski and ASP were 75 percent at fault. Unhappy with the verdict, Blackmon and TCI now seek post trial relief.

As a preliminary matter, Blackmon & TCI failed to provide this Court with the appropriate standards of review, and thus, the Plaintiffs will do so. When considering a motion for JNOV, the standard of review for a federal court sitting in diversity is determined by state law. *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 296 (7th Cir.1990). The Illinois Supreme Court has delineated this standard in *Pedrick v. Peoria & Eastern R.R. Co.* 37 Ill.2d 494 (1967). In that case, the Illinois Supreme Court held that "a judgment notwithstanding the verdict cannot be granted on the basis of factual matters unless all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill.2d at 510.

However, when considering a motion for a new trial in a diversity action, federal courts apply federal standards. *McClain v. Owens-Corning Fiberglas Corp.*, 139 F.3d 1124, 1126 (7th Cir.1998). A motion for a new trial may be granted if the verdict is against the manifest weight of the evidence or if a prejudicial error occurred. *See Bankcard Am. v. Universal Bancard Sys.*, 203 F.3d 477, 480 (7th Cir.2000). A verdict is against the manifest weight of the evidence only where there is no legally sufficient basis to support the jury verdict viewing the evidence in the light most favorable to the prevailing party. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir.2004). When a party bases a motion for a new trial on an error of law, the moving party must show that the error was substantial enough to deny her a fair trial. *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir.1986).

Also in diversity actions, federal standards determine whether a verdict is excessive. *Miksis v. Howard*, 106 F.3d 754, 764 (7 Cir.1997). In evaluating an award, federal courts "will vacate a damages award only if it is 'monstrously excessive,' considering whether it is out of line with verdicts in similar cases, or if it bears no rational connection to the evidence." *Id.*; *Littlefield*

2

*v. McGuffey,* 954 F.2d 1337, 1348 (7th Cir.1992). Here, Blackmon and TCI have failed to meet these burdens. Thus, their post-trial motion should be denied.

The law and the evidence supported the verdict rendered on August 31, 2006. Despite Blackmon and TCI's attempt to show otherwise, there is no basis to grant the relief sought in their motion. At trial, an overwhelming amount of evidence was introduced to support the verdict against Blackmon and TCI. Moreover, this Court should dismiss any arguments concerning purported errors arising from the Blackmon and TCI's submitted jury instructions, objections to jury instructions, certain motions in limine and/or special interrogatories because of Blackmon and TCI's consistent failure to submit materials in a timely manner and in compliance with the Court's Order. At trial, this Court even commented upon Blackmon and TCI's repeated failure to file materials in a timely manner. (8/28/06 a.m., 3-4). Thus, this Court should find that Blackmon and TCI waived their right to submit such materials at trial, and correspondingly, their right to base their post-trial motions on these late filed submissions. Fed.R.Civ.P. Rule 16(f) & Rule 37; See *Matter of Baker*, 744 F.2d 1438 (10th Cir. 1984) (finding that courts have broad discretion in taking action to enforce their orders). For these reasons and for the reasons detailed below, Blackmon and TCI's post-trial motion should be denied.

## I. BLACKMON AND TCI ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

1. There was more than sufficient evidence presented at trial to support a finding that Blackmon's conduct was a proximate cause of the accident. To determine whether a wrongdoer's conduct is a proximate cause of an injury, Illinois courts use a two-part test. First, whether the first wrongdoer reasonably might have anticipated the intervening cause as a natural and probable result of the first party's own negligence; *Merlo v. Public Service Co.*, 381 Ill. 300, 317 (1943); and then, whether a plaintiff's injury is of a type that a reasonable person would see

3

as a likely result of the conduct. *First Sprinfield Bank & Trust v. Galman*, 188 Ill.2d 252, 257-260 (1999). The Illinois Supreme Court announced the use of this two part test in *Galman*, and these tests were discussed in *Biel v. City of Bridgeview*, 335 Ill.App.3d 526, 533-534 (1st Dist. 2002).

Under the tests announced in *Galman*, it takes little more than common sense to conclude that a jury could find that Blackmon's conduct was a proximate cause of the injuries sustained by the Caletz family and Shane Evans. And it is often said that proximate cause is a jury question. *Palay v. United States*, 349 F.3d 418, 432-33 (7th Cir.2003) (holding that the question of whether proximate cause exists in a case is generally a question for the jury);

This accident occurred after Blackmon lost control of his semi-truck while driving on an entrance ramp to the Dan Ryan. (8/23/06 a.m., 53-56, 98-99; 8/22/06 a.m., 73-78, 89-90, 101-102; 8/28/06 p.m. 7-9, 14-15, 18-20, 29-32, 34-38). The roadway was wet and visibility was poor when he lost control of his vehicle. *Id.* The area where he lost control was curved and two lanes were merging into one lane. *Id.* After Blackmon lost control of his vehicle, he was blocking a portion of the single driving lane. (8/28/06 p.m., 18-20) At that point, he caused the traffic behind him to slow down and attempt to avoid him. (8/23/06 a.m., 55-57, 105-106; 8/28/06 p.m., 7-9, 14-15, 18-20, 29-32, 34-38; 8/22/06 p.m., 79-82). The traffic behind him included the Caletz vehicle and Lachowski's truck. *Id.* However, Lachowki's vehicle could not stop in time and struck Blackmon's vehicle, the Caletz's vehicle and Shane Evans vehicle. *Id.* The total time elapsed from the time Blackmon lost control of his vehicle to the time Lachowski's vehicle struck the vehicles was as much as 15-20 seconds according to Blackmon, but as little as 5 seconds according to Bryan Elliot. (8/22/06 a.m., 108; 8/28/06 p.m. 18-20, 45).

4

Based on these facts, it can easily be said that a jury could find that Blackmon was a proximate cause of the injuries sustained by the Caletz family and Shane Evans. (8/23/06 a.m., 53-56, 98-99; 8/22/06 a.m., 73-78, 89-90, 101-102; 8/28/06 p.m. 7-9, 14-15, 18-20, 29-32, 34-38). It is reasonable to conclude that when a driver of a semi-truck loses control of his vehicle while driving in adverse conditions, the driver may cause injury to drivers behind him. Moreover, a reasonable jury could find, and in fact, the jury in this case did find, that the injuries to the Plaintiffs were a foreseeable result of Blackmon's acts and omissions. *See e.g. Scerba v. City of Chicago*, 284 Ill. App. 3d 435 (1996) (finding that a CTA bus driver's blocking of crosswalk in violation of a statute could be a proximate cause of pedestrian injury when the pedestrian was struck by a second driver); *Biel*, 335 Ill.App.3d at 533-534 (finding that municipality's failure to maintain a street light could be a proximate cause of automobile accident) *Suwanski v. Village of Lombard*, 342 Ill.App.3d 248, 255-256 (finding that proximate cause is an issue for jury where reasonable people would differ on the cause of the accident). Thus, this Court should reject Blackmon and TCI's proximate cause argument.

2.      There was more than sufficient evidence presented at trial to support giving of the willful and wanton jury instruction. In Illinois, "a willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Ziarko v. Soo Line R.R. Co.,* 161 Ill.2d 267, 273 (1994); *see also* IPI. 14.01 (2005) (defining willful and wanton conduct as a course of action "which, if not intentional, shows an utter indifference to or conscious disregard" for the safety of oneself or others). Willful and wanton conduct has been described as a hybrid

between negligent and intentionally tortious behavior and that there is a thin line between simple negligence and willful and wanton acts. *Ziarko*, 161 Ill.2d at 275. And "[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.* at 275-276. Thus, willful and wanton behavior can be shown where "conduct characterized as willful and wanton may be proven where the acts have been less than intentional- *i.e.*, where there has been a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through carelessness when it could have been discovered by the exercise of ordinary care." *Id.* at 274.

In an attempt to find error in the giving of the willful and wanton instruction to the jury, Blackmon and TCI: misconstrue the application of the standard for willful and wanton conduct; claim that there was no evidence to support the provision of the instruction for willful and wanton conduct; and cite, *Bartolucci v. Falleti*, 382 Ill. 168 (1943), a case decided more than 60 years ago, to support their claims. Additionally, this Court should note that this is the third time Blackmon and TCI have made such an argument. (Exhibit 2)

This Court should reject Blackmon and TCI's argument and the claims they make to support that argument. The *Bartolucci* case is distinguishable from this matter. Moreover, the overwhelming weight of case law and a reading of the requirements for willful and wanton conduct, support the provision of the willful and wanton instruction to the jury.

Contrary to Blackmon and TCI's claims, *Berlotti* is not sufficiently analogous to this matter to lend meaningful support to their argument. In *Berlotti*, the Illinois Supreme Court was faced with an issue of whether a defendant driver's conduct could support a jury finding of willful and wanton conduct. *Id.* at 174-176. In that case, the plaintiff presented evidence that the

6

defendant driver was speeding in the rain while traveling on a curved roadway at night. *Id.* at 174-176. While proceeding on the curve, one of the vehicle's wheels dislodged causing the vehicle to crash. *Id.* On review, the Court specifically noted that the evidence indicated the defective wheel caused the crash rather than the speed of the vehicle or the driving conditions. *Id.* 174-176. And at trial, no evidence was presented which could indicate that the defendant driver knew or should have known his wheel was defective prior to the accident. *Id.* at 175. Under those circumstances, the Court found that there was no evidence to support a finding of willful and wanton conduct because the cause of the crash was not shown to be the speed or the wet conditions but the defective wheel. *Id.* at 174-176. However, the Court acknowledged that speed and the circumstances surrounding a driver can be considered in deciding whether there is evidence of willful and wanton conduct. *Id.* at 175.

In the case at bar, there was no evidence that Blackmon's truck was defective or that some mechanical defect caused him to lose control of his vehicle. However, there was evidence presented indicating that Blackmon crashed because of his failure to reduce his speed in light of the lane merger, the wet conditions, and the poor visibility. (8/23/06 a.m., 53-56, 98-99; 8/22/06 a.m., 73-78, 89-90, 101-102; 8/28/06 p.m. 7-9, 14-15, 18-20, 29-32, 34-38). Mario Caletz testified that the road was wet, visibility was poor, and Blackmon lost control of his truck in an area where two lanes merge to one. (8/23/06 a.m., 53-56, 98-99). Moreover, he testified that there were slippery when wet signs and merger signs just before the area of the area of the accident. (8/23/06 a.m., 68-71). Finally, Lachowski testified that Blackmon should have known that the adverse road conditions require Blackmon to slowdown and maintain to control of his vehicle. (8/22/06 a.m., 81-84).

Testimony supporting the provision of the willful and wanton instruction also came from Blackmon. Blackmon testified that he was driving at 45 mph on an entrance ramp in wet conditions, during a time of poor visibility, in an area where he was coming out of a curve and two lanes merged into one. (8/22/06 a.m., 73-76, 89-90). He testified that he was an experienced professional semi-truck driver who had knowledge of the handling limitations of a semi-truck and that he was familiar with the area of the incident. (8/22/06 a.m., 73-78, 101-102). He stated that despite his speed, driving conditions and the road configuration, he did not believe that hazardous conditions existed on the roadway. (8/22/06 a.m., 89-90). Additionally, Officers Patrick O'Flaherty, Edward Goliak, Keith Lutz testified that Blackmon was driving too fast for conditions. (8/22/06 p.m., 23-24, 28-29, 60-63)

Finally, the mere fact that Blackmon claimed someone cut him off at trial did not prohibit the Court from giving the willful and wanton instruction to the jury because that version of the event was merely one of many versions given at trial of how the accident occurred. (8/23/06 a.m., 53-56, 98-99; 8/22/06 a.m., 73-78, 89-90, 101-102; 8/28/06 p.m. 7-9, 14-15, 18-20, 29-32, 34-38; 52-57, 8/22/06 p.m., 50-56). Blackmon lacked credibility at trial due to the number of times he was impeached and the number of versions he gave of how the accident occurred before trial. (8/22/06 a.m., 71-107, 135-140). Thus, the evidence presented at trial, supported the willful and wanton jury instruction.

In Illinois, courts have found that there was evidence to support allegations of willful and wanton conduct when an accident occurs as a result of speeding under adverse conditions such as wet roads, poor lighting, and/or roadway configurations. In *Krivitskie v. Cramlett*, 301 Ill.App.3d 705 (2nd Dist. 1998), the Illinois Appellate Court was faced with an argument similar to the argument being made by Blackmon and TCI. As in this case, the court in that case was

8

faced with the issue of whether driving at a high rate of speed in the rain could support a willful and wanton claim. *Krivitskie*, 301 Ill.App.3d at 708-709. The Appellate Court found that such conduct under such conditions could support a jury finding of willful and wanton conduct, and that "[i]t is the exceptional case wherein it can be said that the question of willful and wanton misconduct on the part of a driver. . . . . .is not a question of fact for the jury." *Id.* at 708-709 (*citing Hatfield v. Noble*, 41 Ill.App.2d 112, 121 (2nd Dist. 1963).

Moreover, other Illinois courts have made similar findings when faced with the facts of speeding in wet conditions. *See e.g. Hatfield v. Noble*, 41 Ill.App.2d at 119 (finding that operating a vehicle at excessive speeds while driving on a curved road at night supported allegations of willful and wanton conduct); *Klatt v. Commmonwealth Edison Co.*, 33 Ill.2d 481, 488 (1965) (noting that it was properly a question for the jury whether driver's driving on the shoulder on a rainy day and then swerving back into traffic was willful and wanton misconduct); *Delany v. Badame* 49 Ill.2d 168, 176-177 (1971) (finding that willful and wanton conduct is a jury question when considering the facts of speeding while navigating a curve). Thus, the clear weight of case law supports the provision of the willful and wanton instruction when there is evidence of speeding under adverse conditions.

Finally, this Court should not be fooled by Blackmon and TCI's clever interpretation of the standard for willful and wanton conduct. Blackmon and TCI's arguments that "the critical focus is not the actor's conduct" when deciding whether there is sufficient evidence to support a claim of willful and wanton conduct is misleading to say the least. (Post Trial Motion, 3). While willful and wanton conduct concerns a defendant's reckless mindset, the mindset is proven through the actions of the defendant. *Ziarko*, 161 Ill.2d at 274 (finding that "conduct characterized as willful and wanton may be proven where the acts have been less than

9

intentional- *i.e.,* where there has been a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through carelessness when it could have been discovered by the exercise of ordinary care"); *see also,* IPI 14.01 ("a course of action which... ...shows an utter indifference or conscious disregard"). As discussed, the evidence at trial provided ample support for a willful and wanton instruction. Thus, it was not error to give that instruction to the jury.

## II. BLACKMON AND TCI ARE NOT ENTITLED TO A NEW TRIAL ON ALL ISSUES

**1 & 2.** The Plaintiffs incorporate their response to the motion for judgment as a matter of law as this paragraph 1 of their response to the motion for a new trial as if fully set forth; and for the above reasons, the verdicts and judgments are supported by the law and the evidence.

**3.** This Court acted within its discretion when it denied Blackmon and TCI's special interrogatories pertaining to whether the verdict was for negligence or willful and wanton conduct. The Court acted within its discretion for two reasons. Fed.R.Civ.P. Rule 49(b) (stating that whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court); *see also, Frank Briscoe, Co., Inc. v. Clark County,* 857 F.2d 606, 614 (9th Cir.1988), *cert. denied,* 490 U.S. 1048 (1989). First, the interrogatories were submitted in an untimely fashion just before closing argument in violation of the Court's Pretrial Order. Specifically, they were filed electronically the day before closing arguments while the parties were in Court. (See Exhibit 3) As already noted, this Court has various tools to ensure compliance with its Orders. Fed.R.Civ.P. Rule 16(f) & Rule 37; *Baker,* 744 F.2d 1438. Second, these interrogatories were meaningless to the factual issues in the case and they would not have affected the verdict. The Plaintiff was not seeking punitive damages and the verdict would have been the same under the negligence and/or willful and wanton standard of liability. Thus, there

10

was no prejudice in not clarifying whether the jury found Blackmon and TCI negligent or willful and wanton. Moreover, it is sheer speculation to say that the willful and wanton claim infected the jury's verdict. Even assuming that it did infect the verdict, Blackmon and TCI fail to give any explanation of why a special interrogatory would prevent the so called infection. Thus, this Court was within its discretion to deny the special interrogatories.

4.      The Court did not err when it denied Blackmon and TCI's instructions numbered 30 and 31, which instructed the jury on the ramifications of joint and several liability under 735 ILCS 5/2-1117. It is uncontestable that the denial of these instructions, which other courts refer to as ultimate outcome instructions, was within the Court's discretion. *See e.g. Higgins v. Intex Recreation Corp.* 99 P.3d 421, 428 (Wash 2004) (upholding a trial court's denial of an ultimate outcome instruction because it was within the trial court's discretion). Even Blackmon and TCI concede that the 7th Circuit and the State of Illinois do not require the instruction be given and provide no support for the provision of the instructions. (PTM, 7) Thus, the Court acted within its discretion.

Moreover, there is ample authority supporting the Court denial of Blackmon and TCI's instruction. *Brodsky v. Grinnell Haulers, Inc.,* 181 N.J. 102, 853 A.2d 940, 943 (disapproving of ultimate outcome instructions for joint and several liability because such instructions encourage a jury to apportion fault to fit the result rather than the facts of the case). (N.J. 2004), *Fernanders v. Marks Const. of South Carolina, Inc.* 499 S.E.2d 509 (S.C. 1998) (disapproving of ultimate outcome instructions because they compromise the right of an impartial jury); *Dranzo v. Winterhalter,* 577 A.2d 1349, 1356 (P.A. 1990) ("the collectibility or uncollectibility of a judgment, the operation of joint and several liability, is simply not relevant to the jury's consideration of whether the defendants were causally liable and in what percent"). Also, the

11

comments to IPI B45.03.A support the exclusion of the instructions. The comments provide that fault is to be allocated by the jury and then joint and several liability is to be applied to that allocation. I.P.I. B45.03.A, *comment II* (stating that "[a]fter the jury has returned its verdict, the trial judge and parties will take the jury's allocated percentages of fault and use them for the calculations necessary to enter a judgment or judgments consistent with the principles of comparative negligence, contribution and joint and several liability"). Thus, this Court did not comment error when it denied the special interrogatories.

5.      This Court did not abuse its discretion by partially denying the relief sought in Blackmon and TCI's motion to bar suggestion of a lump sum non-economic award during closing argument. It was within this Court's discretion to partially deny the Motion and this Court should have denied the entire motion. In the motion, Blackmon and TCI sought to: withhold from the jury any argument relating to the obvious damages sustained by the Plaintiffs; limit the ability of the Plaintiffs to make such an argument during close; and disclose to the jury irrelevant information regarding fee arrangements between the Plaintiffs and their counsel.

        This Court acted within it's discretion for three reasons. First, the motion was untimely and in violation of this Court's Final Pretrial Order. This Court required the parties to file their *Motion-in-limine* well in advance of trial, and limited the parties to three motions. The motion was clearly a motion in limine and the Plaintiff did not receive the Motion until after the close of the evidence and not until after the Defendants filed three motions in limine.

        Second, the law does not support the motion. Blackmon and TCI cite *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003 (2nd Cir. 1995), claiming the *Consorti* court held that requests for a specific amount of non-economic damages are improper. Notwithstanding the fact that this Second Circuit case does not control the instant matter, the *Consorti* court admitted

12

flatly that it "has not adopted a per se rule about the propriety of suggested damage amounts..." *Id.* at 1016. Moreover, Blackmon and TCI's reliance on *Waldorf v. Shuta*, 896 F.2d 723 (3rd Cir. 1990), is misplaced. In *Waldolf*, the Court admonished against suggesting a "minimum dollar amount" but that decision was reached only "under the facts of the case." Id. at 744.

Third, the vast weight of case law is supportive of this Court's ruling. (Exhibit 4). In Illinois, it is well-settled that an attorney may suggest an amount of non-economic damages for a jury to consider while deliberating. *Caley v. Manicke*, 24 Ill.2d 390, 182 N.E.2d 206 (1962). Even the Seventh Circuit has acknowledged that suggesting non-economic damage amounts for juries to consider is merely argument. *Whiting v. Westray*, 294 F.3d 943 (7th Cir. 2002). To wit, in upholding a verdict in a trial in which plaintiff's attorney urged the jury to consider \$14 million in non-economic damages, the court noted that "attorneys often ask for the stars while only hoping for the moon." *Id.* at 947. Clearly then, the Seventh Circuit Court understands that suggesting to a jury amounts for non-economic damages is merely argument. Thus, this Court acted within its discretion on this issue.

6.     This Court did not abuse its discretion by allowing portions of the depositions of Officers Patrick O'Flaherty, Edward Goliak and Keith Lutz to be read into the record. Without citation to the record, Blackmon and TCI claim that this Court erred in permitting the Officers from testifying as to their opinions that Blackmon's fault was the cause of the accident. (PTM, 9). The officers did not opine that Blackmon was *the cause of the accident.* Officers O'Flaherty Goliak and Lutz did testify that Blackmon was traveling too fast for conditions; and O'Flaherty and Goliak testified that Blackmon's conduct of traveling too fast for conditions was a contributing factor causing the accident. (8/22/06 p.m., 23-24, 28-29, 60-63). These opinions were not error because the opinions where based on the officers' experience, training and

investigation of the incident. (8/22/06 p.m., 2-24, 25-26, 28-29, 30-33, 50-56, 60-63). *Wiegman v. Hitch-Inn Post of Libertyville, Inc.,* 308 Ill.App.3d 789, 799, (2nd Dist. 1999) (holding that opinion testimony is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability). Additionally, the Defendant's failed to demonstrate any prejudice from the purported error.

7.    The Court did not abuse its discretion by prohibiting Blackmon from testifying to the cause of his memory problems. Without citation to the record, Blackmon and TCI claim that this Court prohibited Blackmon from testifying about his memory problems. However, a review of the record reveals that this Court did not prohibit such action. Rather this Court prohibited Blackmon from testifying to the cause of his memory problems, and over Plaintiffs' objection, permitted Blackmon to testify about his injuries and memory problems. (9/22/06 a.m., 117-122). To the extent that the Court prohibited Blackmon from testifying about the cause of injuries, the Court did not abuse its discretion because Blackmon's testimony lacked foundation. It goes without saying that Blackmon was not competent to give such testimony on the cause of his health problems, and as such, the Court properly excluded his opinions on this matter.

8.    This Court did not abuse its discretion when it allowed Madeline Kahana, M.D., from testifying that she met and examined Brandon Caletz on the day of her trial testimony. (8/24/06 a.m., 18-32). During her trial testimony, she did not provide any opinions based upon that examination. Nor did she describe the examination or Brandon Caletz's condition. And this Court sustained each objection relating to the Plaintiffs counsel's attempts to elicit those opinions (8/24/06 a.m., 29-31). Thus, the disclosure of her meeting and examination of Brandon Caletz was not error, and even if it were error, Blackmon and TCI have not demonstrated that they were prejudiced by the purported error.

14

9.      Contrary to Blackmon and TCI's claim, this Court did not abuse its discretion during closing argument when it restricted their counsel from arguing that "Mario Caletz had given a statement to the police inconsistent with the police report." (PTM, 9). The prohibition of such argument was within the Court's discretion. In his close, counsel for Blackmon and TCI stated that Mario Caletz was arguing with the police about information contained in the report. (8/29/06 a.m., 79). The counsel for the Plaintiffs objected to the use of the word "arguing" and the objection was correctly sustained because there was no testimony that Mario Caletz argued with any police officers about what was contained within the police report. (8/23/06 a.m., 85-96). Moreover, after counsel for the Plaintiffs objection was sustained during close, counsel for Blackmon and TCI was allowed to and actually did advocate that Mario Caletz testified that he told the police that the police report was incorrect. (8/29/06 a.m., 79). Thus, there clearly is no error relating to this issue.

## III.    BLACKMON AND TCI ARE NOT ENTITLED TO A NEW TRIAL ON DAMAGES ONLY

1.      The Plaintiffs incorporate their response to the motion for a new trial on all issues as this paragraph 1 of their response to the motion for a new trial as to damages only as if fully set forth.

2.      The verdict and judgment for the Caletz Plaintiffs was not excessive because it included damages for emotional distress. Blackmon and TCI argue otherwise. They claim that: the Caletz Plaintiffs did not sufficiently plead a claim for emotional distress; there was insufficient evidence at trial to support the inclusion of emotional distress as an element of damages; the closing argument on behalf of the Caletz Plaintiffs was improper; and in the alternative, they argue that the damage award for that emotional distress was excessive. This Court should reject these arguments.

The Caletz Plaintiffs' pleadings provided a sufficient basis to make an emotional distress claim. Notice pleading requires only that a plaintiff make a short plain statement of a claim and it does not require a plaintiff to plead facts or legal theories. *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir.2006); *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir.1992) (complaints do not need to match facts to "elements" of a legal theory). Moreover, to recover for emotional distress, direct victims of emotional distress must plead only the elements of negligence. *Corgan v. Muehling,* 143 Ill.2d 296, 306 (1991). In the last two amended complaints, the Caletz Plaintiffs sought damages for the injuries sustained by the negligent and willful and wanton conduct of Blackmon and TCI. Thus, the Caletz Plaintiffs sufficiently satisfied the requirements of notice pleading to allege emotional distress.

There was sufficient evidence presented at trial for emotional distress to be included as an element of damages on the verdict forms. In Illinois, a plaintiff can seek damages for emotional distress when she is a direct victim or a bystander. *Kapoulas v. Williams Insurance Agency, Inc.,* 11 F.3d 1380, 1382 (7th Cir.1993). The Caletz Plaintiffs were both bystanders and direct victims because they were in the vehicle together during the accident. *See e.g. Hayes v. Illinois Power Co.* 225 Ill.App.3d 819 825 (1st Dist. 1992). As being both bystanders and direct victims, the Caletz family may collect damages for emotional distress experienced as a result of the fear they experienced from the accident, their injuries, and/or experiencing the impact of the accident. *Jarka v. Yellow Cab Co.,* 265 Ill.App.3d 366, 374 (1st Dist. 1994) (permitting a plaintiff to collect damages for emotional distress arising from fear for one's safety); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,* 948 F.Supp. 747, 749-751 (N.D.Ill. 1996) (permitting a plaintiff to collect damages for emotional distress arising from an injury); *Kapoulas,,* 11 F.3d at 1384-1385 (finding that a plaintiff can collect damages for emotional distress arising from the

impact of an accident). Moreover, medical testimony is not required for a jury to award damages for emotional distress. *Daskalea v. District of Columbia,* 227 F.3d 433, 444 (D.C.Cir.2000) (noting that "it does not take an expert to confirm the jury's common sense with respect to both [the] existence and cause" of plaintiff's emotional distress).

Mario and Stephanie Caletz were entitled to receive damages for emotional distress as a result of the accident because they were injured in the accident and involved in the impact of the accident. Both of them described the facts of the accident as watching Blackmon lose control in front of them, then being struck from behind and then being rammed into something in front of them. (8/23/06 p.m., 23-34; 8/23/06 a.m., 55-59, 74-77). They both testified about hearing screams from their children. (8/23/06 p.m., 31-34 8/23/06 a.m., 59-60). They both testified about the injuries they received as a result of the accident including Mario's injuries to his wrist. (8/23/06 p.m., 34-35; 8/23/06 a.m., 74-76). From this evidence, the jury could infer and award damages for emotional distress.

The Estate of Crystal Colon was also entitled to receive damages for emotional distress. Crystal Colon was in the vehicle during the impact, she suffered injury and there was evidence of consciousness after the impact. Illinois permits recovery for a decedent's mental distress under certain circumstances when it is accompanied by a related physical injury. *In re Aircrash Disaster Near Roselawn,* 948 F.Supp. 747, 750 (N.D.Ill. 1996); 755 ILCS § 5/27-6 (1996) ("actions to recover damages for an injury to the person" survive the person's death). Specifically, Mario Caletz testified to Crystal Colon's grimacing and coughing up blood after the accident. (8/23/06 a.m., 77). From this evidence, the jury could infer and award damages for emotional distress.

17

Brandon and Joel Caletz were entitled to receive damages for emotional distress because they were injured in the accident and involved in the impact of the accident. (8/23/06 p.m., 33-38; 8/23/06 a.m., 59-60). Kimberly Joseph, M.D. and Madeline Kahana, M.D., testified to Brandon and Joel's injuries including skull fractures received by both of them and brain damage received by Brandon. (8/23/06 p.m., 20-23; 8/24/06 a.m., 18-32). The jury also heard testimony from Mario and Stephanie Caletz about Brandon and Joel's reaction to and experience during the accident. (8/23/06 p.m., 31-34; 8/23/06 a.m., 59-60, 74-77). Additionally, they heard about the problems Brandon experienced since the accident. (8/23/06 p.m., 34-38). From this evidence, the jury could infer and award damages for emotional distress.

The closing argument on behalf of the Caletz Plaintiffs was not improper. Counsel for the Caletz Plaintiffs argued from the evidence about the injuries sustained by the family and the ordeal that they went through on the date of the accident. (8/29/06 a.m., 4-30). At no time did counsel for Blackmon and TCI object to the argument. *Doe v. Johnson*, 52 F.3d 1448, 1465 (7th 1995) (finding that failure to object to portions of a closing argument during trial waives all right to raise the impropriety of the argument as an issue on appeal). Additionally, Blackmon and TCI have not even claimed that the closing argument was error which would provide them with a basis for a new trial on all issues. Thus, this Court should not allow the closing argument to be an issue at this point in the motion.

Finally, the damage awards received for emotional distress were not excessive. The Caletz family experienced a horrific multi-vehicle accident where they received injuries. Contrary to Blackmon and TCI's claims, the evidence supported the damage awards for emotional distress. Moreover, Blackmon and TCI fail to cite a single case supporting their

18

argument that the damage award should a reduced. For these reasons, Blackmon and TCI are not entitled to a new trial on damages.

**3 & 4.** The $4,290,000 verdict and judgment entered in the wrongful death action was not excessive as a matter of law because it included damages for Robert Colon. Robert Colon was Crystal's father and he receives a presumption of substantial loss. *Bullard v. Barnes,* 102 Ill.2d 505, 517 (1984). At trial, Stephanie Caletz provided sufficient evidence to support the inclusion of Robert Colon on the verdict form. (8/23/06 p.m., 27-29). Additionally, the lack of testimony from the minors Brandon Caletz and Joel Caletz as to the loss they suffered as a result of the death of their sister, Crystal Colon, provides no basis for this Court to Order a new trial on damages only. The testimony of Stephanie Caletz provided sufficient evidence to support the loss of society award. (8/23/06 p.m., 39-40). Thus, these arguments should be rejected.

**5.** The amount of the non-economic jury awards to Shane and Shannon Evans does not justify a new trial on damages. Despite Blackmon and TCI's unsupported argument to the contrary, there was ample evidence to support the amount of the verdict and the verdict does not come close to meeting the standard set for remittitur in federal court. *See generally, Littlefield,* 954 F.2d at 1348 (providing standard to evaluate excessive verdicts). The jury not only observed Shane Evans but also was shown photographs regarding Evans' surgeries and disfigurement. The jury heard all of the testimony from the Evans together with the uncontested testimony of his physicians and surgeons. Further, Blackmon and TCI's claim relating to comparative shopping for verdicts is unfounded.

## III.   BLACKMON AND TCI ARE NOT ENTITLED REMITTITUR

**1 & 2.** The Plaintiffs incorporate their response to the motion for a new trial as to damages only as this paragraph 1 of their response to the motion for remittitur as if fully set forth. The verdict

19

was supported by the law and the evidence. Blackmon and TCI fail to cite any authority to support their motion, and more specifically, for any of the numbers they suggest the verdicts should be reduced to by this Court. For these reasons, this Motion should be denied.

## IV. MOTION FOR JUDGMENTS ON COUNTERCLAIMS

On September 21, 2006, this Court resolved this issue. Therefore, this issue is mute and no response to this motion is needed at this time. Furthermore, the Plaintiffs expect and the law requires that the verdict be executed in accordance with the provisions of 735 ILCS 5/2-1117.

## CONCLUSION

WHEREFORE for the foregoing reasons, the Plaintiffs Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, a minor, Deceased; Stephanie Caletz, Individually; Mario Caletz, Individually; Stephanie Caletz and Mario Caletz, as parents and next friends of Brandon Caletz, a minor; Stephanie Caletz and Mario Caletz as parents and next friends of Joel Caletz, a minor; Shane Evans and Shannon Evans, respectfully request that this Court deny the Defendants, Jesse Blackmon and Transport Carriers Inc.'s Post-Trial Motion and grant such other relief that the Court deems just.

POWER ROGERS & SMITH, P.C.

By: ____s/ Larry R. Rogers____
One of the Attorneys for Plaintiffs

Larry R. Rogers
Brian LaCien
Attorney for the Caletz Plaintiffs
**Power Rogers & Smith, P.C.**
70 W. Madison Street, 55th Floor
Chicago, IL 60602
312-236-9381

Michael D. Spinak
**Spinak & Babcock, P.C.**
Attorneys for Shane & Shannon Evans
134 N. LaSalle Street, Suite 700
Chicago, Illinois 60602
Phone: (312) 346-1337

20

Order Form (01/2005)   Case 1:99-cv-08146   Document 266   Filed 09/01/2006   Page 1 of 1

## United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8146 | **DATE** | 9/1/2006 |
| **CASE TITLE** | COLON et vs. BLACKMAN et al | | |

#### DOCKET ENTRY TEXT

Trial held - jury. Enter jury verdict in favor of plaintiff Shane Evans and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $4,020,427.18; in favor of plaintiff Shannon Evans and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $1,025,000.00; in favor of plaintiff Joel Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $153,512.00; in favor of plaintiff Brandon Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $932,789.88; in favor of plaintiff Mario Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $1,409,963.00; in favor of plaintiff Stephanie Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $3,500,162.00; in favor of plaintiff Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, on the wrongful death claim, and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $4,290,000.00; in favor of plaintiff Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, on the survival claim, and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $111,239.74.   Trial ends.

*Mail AO 450 form.

4:00

| | Courtroom Deputy | JS |
|---|---|---|



AO 450(Rev. 5/85) Judgment in a Civil Case



# United States District Court
## Northern District of Illinois
### Eastern Division

COLON et al

v.

BLACKMAN et al

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 8146

■    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff Shane Evans and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $4,020,427.18; in favor of plaintiff Shannon Evans and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $1,025,000.00; in favor of plaintiff Joel Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $153,512.00; in favor of plaintiff Brandon Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $932,789.88; in favor of plaintiff Mario Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $1,409,963.00; in favor of plaintiff Stephanie Caletz and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $3,500,162.00; in favor of plaintiff Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, on the wrongful death claim, and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $4,290,000.00; in favor of plaintiff Stephanie Caletz, as Special Administrator of the Estate of Crystal Colon, on the survival claim, and against defendants Jesse Blackmon, Transport Carriers Inc, Robert Lachowski, and American Shipping & Packing Inc. in the amount of $111,239.74. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 9/1/2006

/s/ J. Smith, Deputy Clerk

Order Form (01/2005)    Case 1:99-cv-08146    Document 212    Filed 07/27/2006    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8146 | **DATE** | 7/27/2006 |
| **CASE TITLE** | Colon, et al. Vs. Blackmon, et al. | | |

#### DOCKET ENTRY TEXT

Jesse Blackmon and Transport Carriers, Inc.'s motion to dismiss plaintiffs' fifth amended complaint [208] is denied.

■[ For further details see text below.]                                                                         Docketing to mail notices.

### STATEMENT

On 5/31/05, defendants' Jesse Blackmon and Transport Carriers, Inc. ("the Blackmon defendants") filed a motion to dismiss plaintiffs' fourth amended complaint. On 6/27/05, Judge Levin denied that motion. Judge Levin's order states that "plaintiffs have properly plead willful and wanton conduct in that the fourth amended complaint sufficiently alleges that Blackmon engaged in conduct that exhibited a conscious disregard for the safety of the plaintiffs involved in the subject accident."

On 7/25/06, the Blackmon defendants filed a motion to dismiss plaintiffs' fifth amended complaint. That motion is nearly identical to the Blackmon defendants' motion to dismiss plaintiffs' fourth amended complaint. Further, with respect to the willful and wanton counts at issue, the allegations in plaintiffs' fifth amended complaint are the same as those in the fourth amended complaint. Judge Levin already found that these counts sufficiently allege that Blackmon engaged in conduct that exhibited a conscious disregard for the safety of the plaintiffs involved in the accident. Based on the foregoing, the Blackmon defendants' motion to dismiss plaintiffs' fifth amended complaint is denied.

| | Courtroom Deputy Initials: | JD |
|---|---|---|

Were Jesse Blackmon/Transport Carriers, Inc. guilty of negligence that was the proximate cause of injuries to plaintiffs?

Yes_____                              No_____

Blackmon/Transport Special Interrogatory No. 1

Were Jesse Blackmon/Transport Carriers, Inc. guilty of willful and wanton misconduct that was the proximate cause of injuries to plaintiffs?

Yes_____                                No_____

_____          _____

_____          _____

_____          _____

Blackmon/Transport Special Interrogatory No. 2

At the time of the death of Crystal Colon, was Robert Colon estranged from Crystal Colon?

Yes_____          No_____

_____          _____

_____          _____

_____          _____

Blackmon/Transport Special Interrogatory No. 3

*Bullard v. Barnes,* 102 Ill.2d 505, 468 N.E.2d 1228 (1984);
*Gabriel v. Illinois Farmers Insurance Co.,* 171 Ill.App.3d 633, 525 N.E.2d 864

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a true and correct copy of Defendants' Special Interrogatories, via the Clerk of the Court using the CM/ECF system, and attorneys of record to be served electronically with same on August 28, 2006:

### Attorney for Plaintiff
Larry Rogers, Sr.
Power Rogers & Smith
70 W. Madison St. – Suite 5500
Chicago, Illinois 60602
(312) 236-9381
(312) 236-0920 (fax)

### Attorneys for Third-Party Deft. (Mario Caletz)
Travis G. Maisel
Oltman & Maisel
77 W. Washington, Suite 1605
Chicago, IL 60602
(312) 263-7180
(312) 263-3817 (fax)

### Counsel for Co-Defendants Lachowski & American Shipping & Packing
Mr. Mark Wolfe
Bollinger, Ruberry & Garvey
500 West Madison Street, Suite 2300
Chicago, Illinois 60601
(312) 466-8000
(312) 466-8001 (fax)

### Attorneys for Plaintiff Shane & Shannon Evans
Michael D. Spinak
James E. Babcock
Spinak & Babcock, P.C.
134 North LaSalle - Suite 1020
Chicago, IL 60601
(312) 346-1337
(312) 346-1398 (fax)

s/David F. Ryan

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN EVOY, as plenary guardian of<br>Jillian Palenik, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04 C 4211 |
| vs. | ) | |
| | ) | |
| CRST VAN EXPEDITED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff, Joan Evoy, as the parent and plenary guardian of Jillian Palenik, sued CRST

Van Expedited for injuries her daughter suffered as a result of a catastrophic traffic accident on

April 21, 2004 in LaSalle County, Illinois. After CRST admitted that it was liable for the

accident, the issue of damages was tried to a jury, which returned a verdict for Evoy in the

amount of $23,564,605.97. CRST has moved for a new trial. For the following reasons, the

Court denies CRST's motion.

### Facts

On April 21, 2004, Jillian Palenik and her boyfriend, Joshua Wilson, were traveling on

Interstate 80 in LaSalle County, Illinois, when a CRST employed tractor-trailer driver, Thomas

Leopold, fell asleep at the wheel, crossed the highway median, and crashed head-on into

Palenik's and Wilson's vehicle. Palenik suffered severe brain injuries, and, as a result, she has

limited use of her arms and legs and is effectively incapable of communicating with others.

Wilson suffered multiple fractures as well as other injuries.

CRST admitted liability, and the parties tried the issue of damages to a jury. Wilson settled his case during trial, and the jury awarded Evoy, as Palenik's guardian, $23,564,605.97: $559,605.97 for past medical expenses; $30,000 for past lost earnings; $14,000,000 for future medical expenses; $450,000 for future lost earnings; $25,000 for past, present, and future disfigurement; $1,000,000 for past loss of a normal life; $5,500,000 for future loss of a normal life; $500,000 for past pain and suffering; and $1,500,000 for future pain and suffering.

### Discussion

Federal Rule of Civil Procedure 59(a) permits a court to grant a motion for a new trial if the jury's verdict was against the clear weight of the evidence or the trial was unfair to the moving party. *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1196 (7th Cir. 1992). In its motion for a new trial, CRST points to eight rulings that it maintains were erroneous and resulted in prejudice warranting a new trial.

### 1.    Sallman testimony

CRST first argues that the Court erred by allowing Evoy's accident reconstruction expert, David Sallmann, to testify about the circumstances surrounding the crash. Sallman discussed photographs of the accident scene (which were shown to the jury) and testified about the speed, direction, and weight of the two vehicles in the seconds leading up to the accident. CRST contends, citing *Bullard v. Barnes*, 102 Ill. 2d 505, 519, 468 N.E.2d 1228, 1235 (1984), that this evidence was irrelevant and unfairly prejudicial because CRST admitted liability and did not dispute the nature and extent of Palenik's injuries.

In *Bullard*, the plaintiff's seventeen year-old son died shortly after he was involved in a serious automobile accident, and the defendants admitted liability. *Id.* at 509, 468 N.E.2d at

2

1231. The undisputed evidence showed that the decedent, Scott Bullard, was driving southbound on a two lane road, when a truck heading northbound and driven by defendant Bruce Barnes attempted to pass two vehicles. *Id.* The passing maneuver forced Bullard to swerve off the road to avoid a collision. *Id.* Bullard then lost control of his car as it veered back onto the highway, and he collided with another car driving in the northbound lane. *Id.* After the accident, Barnes continued driving northbound without stopping. *Id.* at 510, 468 N.E.2d at 1231.

The trial court allowed the plaintiff to present, over the defendants' objection, evidence about Barnes's passing maneuver, including the location and speed of the vehicles before the accident; evidence about Barnes's failure to stop; and pictures of the decedent's corpse. *Bullard v. Barnes,* 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 491 (1983). On appeal, the court held that the trial court's rulings constituted reversible error. *Id.* at 393, 445 N.E.2d at 492. It said that evidence of the passing maneuver might be relevant in an injury case, "especially when there is ground for believing that the plaintiff is exaggerating his injuries," but that it had no place in a wrongful death case. *Id.* With regard to the photographs, the appellate court said that they would usually be relevant to the nature and extent of the injury as well as the resultant pain and suffering, but that they were not relevant in this case, because there was slight evidence that the decedent was alive after the accident and no evidence that he experienced conscious pain. *Id.*

The Illinois Supreme Court affirmed the appellate court's ruling on the inadmissibility of evidence concerning the passing maneuver and failure to stop but reversed the ruling on the morgue photos. *Bullard,* 102 Ill. 2d at 519, 468 N.E.2d at 1235. The court held that the passing maneuver and failure to stop were not relevant to any issue in controversy but that the photographs were relevant to show the decedent's pain and suffering. *Id.* The Illinois Supreme

3

Court subsequently extended *Bullard* by holding that photographs of accident scenes are also relevant to show pain and suffering, even in wrongful death cases. *See Drews v. Gobel Freight Lines, Inc.*, 144 Ill. 2d 84, 101, 578 N.E.2d 970, 978-79 (1991).

The court in *Bullard* did not articulate its reasoning for distinguishing evidence about the passing maneuver and failure to stop from the morgue photos. Nevertheless, it is reasonable to infer – especially given the subsequent ruling in *Drews* – that the court found the morgue photos relevant to pain and suffering because they showed the magnitude of the forces experienced by the decedent. This would also explain why the court excluded evidence about the passing maneuver and failure to stop: they showed nothing about the effect of the crash on the decedent, because the defendant's truck did not make contact with the decedent's vehicle. Indeed, this evidence only tended to show that defendant was negligent and generally unconcerned about the well-being of the decedent, two points that would be irrelevant in a case of admitted liability.

With this distinction in mind, it becomes clear that Sallman's testimony was relevant to show Palenik's pain and suffering. Like the accident scene and morgue photographs in *Bullard* and *Drews*, the speed, direction, and weight of the two vehicles involved in the crash, together with the accident scene photos, all gave the jury a sense of the magnitude of the force that the CRST truck exerted on Palenik's body. In addition, unlike in *Bullard*, where the trial court erroneously admitted evidence about the defendant's passing maneuver and failure to stop – evidence that did not relate to the impact of the crash – the Court did not allow Evoy to present evidence concerning why the CRST truck's driver crossed the center line. In short, Sallman's testimony only concerned evidence relevant to the issue of Palenik's pain and suffering. And though CRST did not dispute that Palenik had been severely injured, it did dispute what Palenik

4

should be awarded for pain and suffering, as well as for other other elements of damages. In sum, the evidence was relevant to disputed issues in the case. Consequently, its admission does not warrant a new trial.

### 2. Schwartz testimony

CRST next argues that the Court erred by preventing its expert, Dr. Harry Schwartz, from discussing an Australian life expectancy table, which showed a reduced life expectancy for persons with severe brain injuries. Dr. Schwartz testified at trial that "the American literature, in the past five years shows that at best, even the best brain-injured patients, those with minimal problems compared to Jillian, have a seven-year reduced life expectancy on average." Feb. 24, 2006 Tr. at 609-10. CRST complains that the Court also should have allowed Schwartz to support this testimony by discussing the Australian study.

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). According to the Seventh Circuit, a trial court, in deciding whether to admit expert testimony, first must determine whether the testimony is reliable by assessing whether the expert is qualified in the relevant field and by examining the expert's methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The Court must then determine if the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *Id.* at 721.

The Court excluded testimony about the Australian study because it concerned experiences with brain-injured people in another country that was not shown to be comparable to the experience in this country and because Schwartz, in his deposition, admitted that he had "not

5

plugged [Palenik's] particular circumstances into a life table to see exactly what it would be."
Feb. 13, 2006 Tr. at 31. This suggested to the Court that the Australian life expectancy table
would not contribute to a reasoned estimate of Palenik's life expectancy that would assist the
jury.

The Court believes that its ruling was correct, but even if we erred by excluding the
Australian life expectancy table, the error was harmless. The Australian study's limited
relevance, if any, added little to the conclusions that the Court allowed Schwartz to present,
specifically, that Palenik's life expectancy likely was reduced by her injury. The error, if one
occurred at all, does not warrant a new trial.

### 3. Baade testimony

CRST next argues that the Court erred by barring defendant's economist, Dr. Robert
Baade, from testifying about Palenik's life expectancy. At a hearing that took place during trial
outside the presence of the jury, Dr. Baade testified that he calculated Palenik's life expectancy
by using a medical study that requires one to assign a particular individual to one of thirty
different categories according to any injuries or disabilities from which he or she may suffer. To
obtain an average life expectancy using this study, one matches the particular individual's
symptoms with those listed in the different categories and obtains a "disability rating." The
disability rating is then used to calculate an average life expectancy. Feb. 21, 2006 Tr. at 115-
29.

As discussed above, the Federal Rules of Evidence require the Court to determine the
reliability of expert testimony by assessing whether the expert is qualified in the relevant field
and by examining the expert's methodology. "'Whether a witness is qualified as an expert can

6

only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.'" *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)).

In *Jones*, the trial court allowed a metallurgist, who had a doctoral degree in Metallurgy and Material Science from MIT, to testify about "the toxicity of manganese fumes and the lung's ability to absorb manganese from those fumes." *Id.* at 723. The Seventh Circuit held that the expert testimony should have been excluded because it involved medical or biological matters outside of the witness's expertise. *Id* at 724.

As in *Jones*, CRST attempted to introduce medical evidence through a witness who had no expertise in the medical sciences. Dr. Baade, who was an economist, not a medical doctor, calculated Palenik's life expectancy by classifying her symptoms, which he learned about by reading deposition testimony. CRST offered no evidence that Dr. Baade was qualified to opine about Palenik's disability rating by making his own determinations about how her symptoms and disabilities should be classified. The evidence was correctly excluded, and the ruling does not warrant a new trial.

### 4. Yarkony testimony

CRST next argues that the Court committed prejudicial error by allowing plaintiff's expert Dr. Yarkony to testify regarding an examination of Palenik that he performed a week before trial and well after the close of discovery. In its motion to bar Yarkony's testimony, however, CRST asked that the Court either bar the testimony *or* allow CRST's expert, Dr. Schwartz, to examine Palenik prior to testifying at trial. *See* Docket No. 119 at 4. The Court

granted CRST's motion by allowing Schwartz to examine Palenik before testifying. As a result, CRST cannot now claim the ruling requires a new trial. *Cf. Ortega Trujillo v. Banco Central Del Ecuador,* 379 F.3d 1298, 1301 (11th Cir. 2004) (holding that plaintiff cannot appeal a trial court's order granting plaintiff's motion for voluntary dismissal).

### 5. Plaintiff's counsel's suggestion of a specific non-economic award to the jury

CRST next argues that the Court committed prejudicial error by allowing Evoy's attorney to suggest a specific non-economic damage award to the jury. The question appears to be governed by federal law.[1] *See Waldorf v. Schuta,* 896 F.2d 723, 744 (3d Cir. 1990); *Waldron v. Hardwick,* 406 F.2d 86, 88-89 (7th Cir. 1969). In *Waldorf,* the Third Circuit held that plaintiff's counsel's argument, which requested a specific amount of damages for pain and suffering, was improper and constituted reversible error. 896 F.2d at 744. The court said that "a jury trial should be an appeal to the rational instincts of a jury rather than a masked attempt to 'import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible to evaluation on any such basis.'" *Id.* at 744 (quoting *Botta v. Brunner,* 26 N.J. 82, 100, 138 A.2d 713, 723 (1958)).

The Seventh Circuit, however, has adopted a different course. In *Waldron,* the plaintiff's attorney made a per diem argument – a suggestion that the jury award a certain dollar amount per day for pain and suffering – and the trial court did not advise the jury that the argument could be

---

[1] Intuitively, the substance of an attorney's argument about the amount of damages to award does not strike the Court as the type of procedural issue that should be governed by federal law under the Supreme Court's *Erie* doctrine. *See Erie v. Tompkins,* 304 U.S. 64 (1938). Were Illinois law to apply, however, the result would be the same. *See Grimming v. Alton & S. Ry. Co.,* 204 Ill. App. 3d 961, 979, 562 N.E.2d 1086, 1097 (1990) (attorney may suggest pain and suffering award to the jury); *Warp v. Whitmore,* 123 Ill. App. 2d 157, 164, 260 N.E.2d 45, 49 (1970) (same).

8

disregarded. 406 F.2d at 88. The Seventh Circuit held that the trial judge committed harmless error, if any, by allowing the argument and said that such an argument certainly would have been permissible if a cautionary instruction had been issued. *Id.* at 88. The Seventh Circuit reaffirmed this holding in *Bell v. City of Milwaukee*, 746 F.2d 1205, 1251 n.58 (7th Cir. 1984).

Though *Waldron* and *Waldorf* seem to indicate a circuit split on the propriety of suggesting awards for non-economic damages, this Court is obliged to follow Seventh Circuit precedent. In light of the cautionary instruction given to the jury,[2] the Court is convinced that Evoy's closing argument did not unfairly prejudice CRST.

### 6.    Plaintiff's counsel's argument regarding Palenik's shortened life

CRST next argues that the Court erred by allowing Evoy's attorney to argue that if Palenik had a reduced life expectancy, it was because of the collision with the CRST truck. Def. Mem. at 7-8. CRST maintains that "claims for wrongful shortening of life are really claims for wrongful death" and that Evoy therefore asked the jury for an award that is only allowed under the Illinois Wrongful Death Act. *Id.* at 8.

The portion of Evoy's closing argument to which CRST objects reads as follows:

MR. MARZEWSKI (Evoy): Now, they – CRST – came before you and said Jill's life expectancy, she's not going to live as long as she would have because of this collision. And, therefore, you shouldn't give her as much money? Let's go back to the loss of normal life. What's more precious than life itself? She had a normal life.

MR. PATTON (CRST): Show my objection to normal life. Show my objection to that.

THE COURT: Overruled

---

[2] *See* Feb. 27, 2006 Tr. at 747-48 ("Any figures proposed by counsel in their arguments are not evidence as to the amounts of damages you should award, but rather constitute arguments, which you are free to disregard in your deliberations.")

9

MR. MARZEWSKI (Evoy): She had a normal life expectancy, and CRST did this to her, and now they're looking for a discount on what they did to her?

Feb. 27, 2006 Tr. at 791-92.

CRST's argument suffers from two different problems. First, Evoy's attorney did not argue that Palenik's life was shortened by the accident; he simply repeated certain contentions that CRST made during its own closing arguments. Second, CRST did not object to Evoy's argument on the ground that it improperly sought damages that are only appropriate in an action for wrongful death. Rather, CRST simply objected, without explanation, to the use of the words "normal life." This was insufficient to preserve the point that CRST now argues. For these reasons, the Court declines to grant a new trial based on the "normal life" argument.

### 7. The verdict form

CRST next argues that the verdict form used by the Court contained too many lines and resulted in an excessive damage award. CRST contends that instead of using two separate lines for past and future amounts, the Court should have used the Illinois Pattern Jury Instructions, which use a single line for past and future amounts. *See* IPI 30.04.01 (loss of normal life); 30.05 (pain and suffering); 30.06 (medical expenses); 30.07 (earnings).

Federal courts are not obliged to use state verdict forms in diversity suits. *See Schultz v. Rice*, 809 F.2d 643, 650-51 (10th Cir. 1986) ("[T]he district court was not required to follow the Kansas guidelines for verdict forms because federal, not state law, governs the submission of special verdicts or interrogatories."). Moreover, Rule 49(a) of the Federal Rules of Civil Procedure says, "The Court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." In this case, the Court, pursuant to Rule 49(a),

required the jury to make nine factual findings on various damage amounts. CRST has not cited, and the Court has not found, any case holding that such a verdict form is unfairly prejudicial to defendants. And we fail to see how CRST was prejudiced in any event. The verdict form was not unfair and does not require a new trial.

### 8. Excessive verdict

CRST next argues that the verdict should be vacated as excessive because it exceeds the range of appropriate compensation. In evaluating the size of a jury verdict in a diversity case, the Court applies state law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 436-37 (1996).

The Illinois Supreme Court recently discussed the proper method for reviewing jury verdicts in *Richardson v. Champan*, 175 Ill. 2d 98, 113, 676 N.E.2d 621, 628 (1997). In *Richardson*, plaintiffs Keva Richardson and Ann McGregor sued the defendants for injuries they suffered in an automobile accident. *Id.* at 113-15, 676 N.E.2d at 628-29. Richardson was rendered quadriplegic, and McGregor suffered lacerations to her face. *Id.* at 111, 115, 676 N.E.2d at 627, 629.

The court held that Richardson's award for medical expenses was excessive because it was $1,500,000 dollars more than any expert estimated for those costs, but it upheld the remainder of Richardson's award because it could not say that the award was "the result of passion or prejudice, 'shock[ed] the conscience,' or lack[ed] support in the evidence." *Id.* at 113, 676 N.E.2d at 628. The court also reduced McGregor's $100,000 award for pain and suffering because she incurred only "a laceration on her forehead, which left only a slight scar." *Id.* at 115, 676 N.E.2d at 629. It also noted that the jury had only awarded McGregor $2,000 in

11

economic damages and nothing for disfigurement. *Id.*

The court, in reviewing these awards, said "An award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Id.* at 113, 676 N.E.2d at 628. The court also recognized that Illinois courts do not traditionally compare a particular jury verdict with those rendered in other cases to determine whether a verdict is excessive. *Id.* at 114, 676 N.E.2d at 628.

CRST maintains that because Illinois law requires judges to determine whether a damages award "falls outside the range of fair and reasonable compensation" without comparing the award with other cases, the review is so arbitrary that it unconstitutionally deprives an individual of property without due process of law. The Court disagrees. The Illinois Supreme Court's instructions on reviewing verdicts for excessiveness – though they speak of a fairly indeterminate range of reasonableness – are not arbitrary. They simply require the Court to determine whether the award finds support in the evidence and whether the non-economic award shocks the conscience, something that – as in *Richardson* – might occur when a jury's non-economic damages award grossly exceeds its economic award or when the evidence shows that a plaintiff's injury was not particularly serious or debilitating.[3] Indeed, when the *Richardson* court actually reviewed the verdicts involved in that case, it did not come up with an actual monetary range of reasonable compensation. In fact, it did not discuss whether the award fell outside the

---

[3] This interpretation of *Richardson* finds support in *Carroll v. Preston Trucking Co., Inc.*, 349 Ill. App. 3d 562, 572, 812 N.E.2d 431, 440 (2004), in which the court stated that a court, in reviewing a verdict for excessiveness, may take into account "(1) the extent and permanency of the injury; (2) the possibility of future deterioration; (3) medical expenses; and (4) restrictions placed on the plaintiff as a result of the injury."

range of reasonable compensation at all. Rather, it focused on whether the award was supported by the evidence, was a result of passion or prejudice, or shocked the conscience. *Id.* at 114, 676 N.E.2d at 628. Given these instructions by the Illinois Supreme Court, the Court's review of a jury verdict in this case is not arbitrary.

Evoy's award included just over $15,000,000 worth of economic damages and just under $9,000,000 worth of non-economic damages. The record supported the economic damages award. Evoy's expert, Dr. Phillip Rushing, testified that Palenik's future medical expenses alone could cost anywhere from $14,200,000 to $19,800,000. In addition, the jury's non-economic damages award, which was a little under sixty percent of the economic award, was not so excessive that it shocks the judicial conscience. Evidence presented at trial showed that due to a traumatic brain injury, Palenik has lost control of her arms and legs, is completely incapable of caring for herself, and is effectively unable to communicate with her family. Evidence also showed that her disability is unlikely to improve. Thus, given the severe nature of her disability and the substantial economic damages award, the non-economic award was not excessive.

CRST also argues that the award was excessive because Evoy's attorney and Evoy's witness injected passion or prejudice into the case by using the words "smash" and "smashed" on three occasions when referring to the accident. First, Palenik's brother testified, without objection, that he saw "exactly what you would expect to see from someone that just got smashed by a semi." Feb. 22, 2006 Tr. at 362. Second, Evoy's attorney asked CRST's expert, over CRST's objection which the Court overruled, whether he understood "that Jill suffered a severe traumatic brain injury where a CRST truck smashed into her." Feb. 24, 2006 Tr. at 624-25. Third, Evoy's attorney in his closing argument stated, without objection, that "[w]e saw

13

photographs regarding the horrific impact of the CRST truck smashing into the front side of the passenger van." Feb. 27, 2006 Tr. at 751.

Because CRST did not object to the use of the word "smash" in the first and third instances discussed above, it cannot claim now that they contributed to an unfair jury award. *See* Fed. R. Evid. 103(a)(1). With respect to the second instance, the Court concludes that under Illinois law, a single use of the word "smashed" during the course of a five day trial – even if it injected some passion into the case – is grossly insufficient to overturn a considered jury award.

Finally, CRST argues that the verdict was excessive because the jury awarded Evoy $6,500,000 for Palenik's loss of a normal life, even though Palenik is largely incapable of appreciating this loss. This argument was squarely rejected by the Illinois Appellate Court in *Holston v. Sisters of The Third Order of St. Francis*, 247 Ill. App. 3d 985, 1005, 618 N.E.2d 334, 347 (1993), *aff'd*, 165 Ill. 2d 150, 650 N.E.2d 985 (1995). We too reject this argument.

### Conclusion

For the reasons stated above, the Court denies defendant's motion for a new trial [docket no. 141]. The Court also notes that defendant prematurely (in advance of the filing of a notice of appeal) deposited proposed supersedeas bonds with the Clerk. *See* Fed. R. Civ. P. 62(d). Any objection by plaintiff to the sufficiency of the bonds must be made by no later than May 4, 2006, or the Court will enter an order approving them.

MATTHEW F. KENNELLY
United States District Judge

Date: April 28, 2006

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

STEPHANIE CALETZ, as Special Administrator )
of the Estate of CRYSTAL COLON, a minor, )
Deceased; et al., )
            Plaintiffs, )
             )
v.                            )      No. 99 C 8146
             )
JESSE BLACKMON; et al.,           )      Magistrate Judge Michael T. Mason
             )
           Defendants. )
_____ )
SHANE EVANS and SHANNON EVANS, )
             )
            Plaintiffs, )
             )
v.                            )      Consolidated with 03 C 318
             )
JESSE BLACKMON; et al.,           )
             )
            Defendants. )

## CERTIFICATE OF SERVICE

       I hereby certify that on October 25, 2006, I electronically filed Plaintiffs' Response to
Defendants' Post Trial Motion with the Clerk of the Court using the CM/ECF system which will send
notification to such filing(s) to the following:

Mark Wolfe
BOLLINGER, RUBERRY
  & GARVEY
500 West Madison, Suite 2300
Chicago, IL 60661
Phone No.     312/466-8000
**Fax No.**     **312/466-8001**

Travis Maisel
Oltman & Maisel
77 West Washington Street, Suite 520
Chicago, IL 60602
Phone No.     312/263-7180
**Fax No.**     **312/263-3817**

John W. Patton, Jr.
Mark Sickles
David Ryan
Kevin J. Rose
PATTON & RYAN
One IBM Plaza
330 North Wabash, 29th Floor
Chicago, IL 60611

Phone No. 312-527-4311
**Fax No. 312-261-5161**

Paula M. Carstensen
Paul V. Esposito
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, IL 60603-1098
Telephone: (312) 855-1010
**Fax (312) 606-7777**

and I hereby certify that on October 25, 2006, I faxed the document(s) to the following non-registered participants:

Michael Spinak
SPINAK & BABCOCK
134 N. LaSalle Street
Suite 1020
Chicago, IL 60602
Phone No.       312/346-1337
**Fax No.       312/346-1398**

Michael D. Sanders
Thomas B. Underwood
PURCELL & WARDROPE, CHTD.
10 S. LaSalle St., Ste 1200
Chicago, IL 60602
(312) 427-3900
**Fax (312) 427-3944**

Respectfully submitted,

s/ Larry R. Rogers
Power, Rogers & Smith, P.C.
Attorneys for Plaintiff
70 W. Madison St., 55th FL.
Chicago, IL. 60602
312/236-9381
Fax: 312/236-0920