## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE CALETZ, a Special Administrator of the Estate of CRYSTAL COLON, a minor, Deceased, STEPHANIE CALETZ, Individually, MARIO CALETZ, Individually, STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of BRANDON CALETZ, a minor, and STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of JOEL CALETZ, a minor; SHANE EVANS, and SHANNON EVANS,<br><br>            Plaintiffs,<br><br>vs.<br><br>JESSE BLACKMON, ROBERT LACHOWSKI, TRANSPORT CARRIERS, INC., and AMERICAN SHIPPING COMPANY,<br><br>            Defendants. | Case No.: 99 C 8146<br>Consolidated with No.: 03 C 318<br><br>Magistrate Judge Mason |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JESSE BLACKMON AND TRANSPORT CARRIERS, INC.'S POST-TRIAL MOTION

### I.

### BECAUSE WILLFUL AND WANTON MISCONDUCT WAS ERRONEOUSLY INJECTED IN THIS CASE, BLACKMON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE WILLFUL AND WANTON CLAIM AND A NEW TRIAL AS TO ALL OTHER ISSUES.

Pure and simple, plaintiffs' position is based on insurance — and the lack of it.

Blackmon has $11 million in coverage; Lachowski/American have under $1 million. Plaintiffs

knew it well before trial. That disparity, not the evidence, explains plaintiffs' argument that

Blackmon — who hit no one — was guilty of willful and wanton misconduct but Lachowski —

who hit everyone — was merely negligent. Blackmon is entitled to JMOL on the willful and wanton claim and a new trial on all other issues.

Plaintiffs misunderstand the willful and wanton misconduct standard. Whether stated by *Ziarko* or by IPI 14.01, the intent of the standard is identical. *Pfister v. Shusta*, 167 Ill. 2d 417, 421-22, 657 N.E.2d 1013 (1995). Plaintiffs needed to prove a course of action exhibiting either an intent to harm or an utter indifference or conscious disregard for the safety of others. IPI 14.01. Proof of a wrongful mental state was crucial. Citing to the Restatement, the Supreme Court has stated:

> The differences between reckless conduct [synonymous with willful and wanton misconduct] and mere negligence are explained in comment *g* of section 500:
>
>> "[Reckless misconduct] differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that recklessness conduct requires *a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.* It differs not only from the above-mentioned form of negligence, *but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.* The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, *but this difference of degree is so marked as to amount substantially to a difference in kind.*" Restatement (Second) of Torts §500, Comment *g*, at 590 (1965).

We subscribe to the Restatement's view that there is a qualitative difference between negligence and willful and wanton conduct.

2

*Burke v. 12 Rothschild's Liquor Mart*, 148 Ill. 2d 429, 449-50, 593 N.E.2d 522 (1992) (emphasis supplied). This is not a "clever interpretation" intended to "fool" anyone (Resp. 9). It is the law. Intent may be proven by actions, but those actions must be aggravated enough to prove it. "[M]ere inadvertence, incompetence, unskillfulness, or a failure to take adequate precautions" is insufficient. *Burke*, 148 Ill. 2d at 449.

Plaintiffs failed to prove the requisite mental state. They offered no proof that Blackmon violated a speed limit, and even such proof would not establish willful and wanton misconduct. *Bartolucci v. Falleti*, 382 Ill. 168, 175, 46 N.E.2d 980 (1943). Driving too fast for roadway conditions is not enough. *Id.* at 175-76. After all, a driver may have been momentarily inattentive or may have just misjudged those conditions — like Shane Evans did. Neither exhibits a "conscious choice of a course of action" with knowledge of "a risk substantially greater an amount than that which is necessary to make his conduct negligent." Blackmon's conduct was no worse than Lachowski's conduct, yet plaintiffs only considered Lachowski to be negligent. Plaintiffs' position as to Lachowski should operate as a judicial admission barring any recovery for willful and wanton misconduct.

*Bartolucci* is not distinguishable because of its age or because defendant had a defective wheel (Resp. 6-7). The Supreme Court assumed that defendant had driven too fast for conditions but found that plaintiff had not met the same liability standard involved here. 382 Ill. at 175-76.

Plaintiffs' cases are distinguishable. *Krivitskie v. Cramlett*, 301 Ill. App. 3d 705, 704 N.E.2d 957 (1988), was decided on the pleadings. The court accepted as true the allegation that defendant drove at excessive speed on wet pavement and acted recklessly and with utter indifference and a conscious disregard for the safety of others. *Id.* at 706, 708. In *Hatfield v. Noble*, 41 Ill. App. 2d 112, 115-16, 119, 190 N.E.2d 391 (2d Dist. 1963), a 21 year old drove at

1091312.1

80 m.p.h. on a very curvy road on a dark, hazy, rainy night after consuming about ten glasses of beer. *Klatt v. Commonwealth Edison Co.*, 33 Ill. 2d 481, 487, 211 N.E.2d 720 (1965), a driver traveled on a sloped curve in a "very hard rain" with "very poor" visibility conditions. Without slowing, he drove at 50-55 m.p.h. for 1,000 feet with his right wheels in a six inch deep gutter. *Id.* And *Delany v. Badame*, 49 Ill. 2d 168, 274 N.E.2d 353 (1971), is the opposite of this case. The jury found no willful and wanton misconduct where defendant was going 40 m.p.h. around a curve on a rural gravel road. *Id.* at 170, 177. The issue was whether plaintiff was entitled to judgment notwithstanding the verdict. It did not concern whether the court erroneously sent the willful and wanton claim to the jury in the first place.

The facts here did not support plaintiffs' willful and wanton misconduct claim, and JMOL should be granted. Whether or not the special interrogatories were given, the erroneous inclusion of the claim also supports a new trial on all issues. It likely affected the jury's allocation of fault because willful and wanton misconduct is qualitatively different from ordinary negligence and carries a social opprobrium not found in negligent behavior. *Burke*, 148 Ill. 2d at 450-452. The allocation of fault to Blackmon may have been as high as 25% only because the jury erroneously considered the willful and wanton claim. If that percentage had been even a fraction lower, Blackmon would owe far less to all plaintiffs. And by erroneously injecting the willful and wanton claim, plaintiffs improperly portrayed Blackmon in a bad light. This likely increased the damage awards to all plaintiffs.

This Court should reject plaintiffs' argument that the special interrogatories were untimely. Quite rightly, the Court was far more flexible than plaintiffs want it to be. Defendants had problems in electronically filing the special interrogatories over the weekend. Trials are pressure packed times when numerous demands, and often last-minute problems arise that

frustrate the best intentions. It is rare that trial counsel foresees all trial needs at the time of filing the pre-trial order. Defense counsel always acted diligently and in good faith in presenting defendants' position. This Court considered the special interrogatories on their merits, and in doing so, the Court acted in the best interest of justice.

Blackmon is entitled to JMOL on the willful and wanton claim and a new trial on the negligence claim.

## II.

### THE COURT ABUSED ITS DISCRETION BY FAILING TO GIVE AN INSTRUCTION ON THE EFFECT OF JOINT AND SEVERAL LIABILITY.

Courts and commentators recognize that a jury properly instructed on the legal effects of its decision will better fashion its verdict to achieve its intent. Plaintiffs' reliance on out-of-state cases ignores the Illinois experience. Plaintiffs do not dispute that the law grants to a plaintiff the right to "ultimate outcome" instructions whenever his fault is in issue. IPI B11.06, B21.02, B21.02.01, B21.02.02, B21.03, B21.04, B21.05, B21.07, B22.01, B22.02, B45.02. These instructions advise a jury about the outcome of a plaintiff's case if it finds plaintiff's negligence to be greater than 50%. Attached as Exhibit 1 is a true and correct copy of plaintiff's closing argument in a recently tried personal injury case in Cook County. Plaintiff told the jury that if it allocated plaintiff's negligence at 51%, she would not recover (Ex. 1 at 09-11, 30-31). Plaintiff's closing argument was based on four IPI instructions/verdicts given by the court (Ex. 2 at 04: B10.03; Ex. 2 at 08-10: B21.02; Ex. 2 at 16-17: B45.01; Ex. 2 at 18-19: B45.01.B). The instructions and argument were perfectly proper because they reflect the law. Blackmon should have been given the same right to instruct the jury on the law.

5

Plaintiffs' argument also ignores the strong Illinois public policy regarding joint and several liability. "The clear legislative intent behind section 2-1117 is that minimally responsible defendants should not have to pay entire damage awards." *Unzicker v. Kraft Food Ingredients, Corp.*, 203 Ill. 2d 64, 78, 1183 N.E.2d 1024 (2002). This public policy will be frustrated if Blackmon or any other defendant may not tell the jury how the law might impact the jury's finding.

In fact, the failure to give an instruction on the allocation of fault creates an equal protection violation under United States and Illinois Constitutions. U. S. Const., amend. XIV, sec. 1; Ill. Const., art. I, sec. 2. The equal protection clause covers both statutes and judicial decisions. *Moose Lodge #107 v. Irvis*, 407 U.S. 163, 179, 92 S. Ct. 1965 (1972). It applies when a statute or rule is not rationally related to a legitimate state interest, and when the relationship of a classification to its goal is not so attenuated as to be arbitrary or irrational. *Fitzgerald v. Racing Association of Central Iowa*, 539 U.S. 103, 123 S. Ct. 2156, 2159 (2003). Illinois certainly has an interest in equally treating both sides of a legal dispute in terms of information given to a jury. Only telling a jury about the legal effect of an allocation of fault on a plaintiff is not rationally related to any legitimate purpose.

Plaintiffs' cases are distinguishable (Resp. at 11-12). Of their four cases, only one refused an instruction on joint and several liability while simultaneously allowing instruction to a plaintiff's fault. *Brodsky v. Grinnell Haulers, Inc.*, 181 N.J. 102, 853 A.2d 940, 949-52 (2004). The court ruled that there is a difference between the two situations, but the court did not explain the difference. In *Roman v. Mitchell*, 82 N.J. 336, 413 A.2d 322, 326-27 (1980), the supreme court upheld an instruction informing the jury about the effect of an allocation of fault to plaintiffs. The court even stated that "a jury informed of the legal effect of its findings as to

6

percentages of negligence in a comparative negligence trial is better able to fulfill its fact finding function." *Id.* at 327. The same would be true if a jury is given an instruction on joint and several liability.

By suggesting that an instruction on joint and several liability is irrelevant to a jury's function, plaintiffs' cases ignore the realities of jury deliberation. The fault-finding process is not an exercise in precision. Most likely, a jury determines a party's fault to be within a range, then rounds the range to a specific percentage for purposes of the verdict form. Most allocations end in a five or zero — a sure sign of rounding. By knowing the effect of an allocation of fault, a jury can better tailor its verdict to fit its true intent. If a jury knows that a 25% finding would impose joint and several liability, it may be unwilling to round up an allocation to 25%. A jury advised of the law will be "better able to fulfill its *fact finding* function." *Roman*, 413 A.2d at 327 (emphasis supplied).

The failure to give Blackmon's requested instruction constituted an abuse of discretion.

## III.

### THE DAMAGE AWARDS TO PLAINTIFFS ARE EXCESSIVE.

Plaintiffs misstate the standard of review. It is governed by state law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 436-37 (1996). Ironically, plaintiffs attach a copy of Judge Kennelly's decision stating that the state law governs the issue of excessiveness (Mem. Op. at 11).

The Caletz plaintiffs were entitled recover emotional distress damages for injuries as direct victims. But those damages fit within the element of "pain and suffering." The case law equates pain and suffering with the emotional distress of a direct victim. *Indianapolis & St. L. R. v. Stables*, 62 Ill. 313, 320-21, 1872 Ill. LEXIS 2 (1872); *Hayes v. Illinois Power Co.*, 225 Ill.

7

1091312.1

App. 3d 819, 821, 825, 587 N.E.2d 559 (4th Dist. 1992); *In Re Air Crash Disaster Near Roselawn Indiana*, 948 F. Supp. 747, 751 (N.D. Ill. 1996); *McAdam v. Eli Lilly & Co.*, 638 F. Supp. 1173, 1175 (N.D. Ill. 1986). The verdict forms contained line items for pain and suffering, and the Caletz plaintiffs recovered pain and suffering damages totaling $151,100.

But they were not entitled to recover an additional $5,075,000 for their alleged emotional distress as bystanders because they failed to meet the test. Each plaintiff was required to show that defendants' negligence created a "reasonable fear for his own safety" *and "physical injury or illness as a result of* the emotional distress caused by the defendant's negligence." *Corgan v. Muehling*, 143 Ill. 2d 296, 303, 574 N.E.2d 602 (1991) (emphasis supplied). The Caletz plaintiffs did not offer evidence that any of them, including Crystal Colon, were in reasonable fear for his or her own safety. None testified to being fearful prior to the accident. In fact, Stephanie did not even believe that there was going to be an accident (8/23/06 p.m. at 42-43). The accident happened too quickly, before there was time to react in fear [8/23/06 a.m. at 80 (Mario); 8/23/06 p.m. at 30 (Stephanie)]. Additionally, the Caletz plaintiffs offered no evidence that, as bystanders, they suffered "physical injury or illness as a result of" the emotional distress caused by defendants' negligence. *Corgan*, 143 Ill. 2d at 303.

By arguing that Blackmon did not object to their closing argument as improper, plaintiffs miss Blackmon's point (Resp. 18). The issue was not whether closing argument was improper. It was whether the Caletz plaintiffs offered evidence allowing them to receive an instruction on emotional distress damages — and so make a closing argument. Blackmon's objection to the giving of the Caletz plaintiffs' instructions and verdict forms was sufficient to preserve error. An additional objection to the closing argument was unnecessary.

1091312.1

The Caletz wrongful death award is also excessive. There is no evidentiary basis for an award to Robert Colon, a father in name only. There was also no testimony from Brandon and Joel as to their alleged loss of society. Because Brandon and Joel were not entitled to a presumption of pecuniary loss, proof was needed. It was not supplied. And on an absolute scale, the wrongful death verdict was too high.

As to the Evans' plaintiffs, their non-economic awards are also excessive. Once the Caletz's erroneous emotional distress damages are removed, the Caletz's recovery is $5,322,666.12, which includes an award for the wrongful death of a child. The same jury returned verdicts for the Evans plaintiffs totaling $5,045,427.18 — just slightly lower. It is inconceivable that if properly instructed as to the Caletz plaintiffs, the jury would have given the Evans plaintiffs such a high award. Shane Evans' injury was serious, but he is still walking and working and enjoying life; the Evans' plaintiffs still have each other. Besides their own injuries, the Caletz plaintiffs lost a young girl — a daughter and sister. Because the same jury awarded all damages, the awards to all plaintiffs should be reassessed, or substantial remittiturs should be granted as to each plaintiff.

## IV.

## BLACKMON STANDS ON ITS
## ENTIRE POST-TRIAL MOTION.

Because of space limitations, Blackmon has not replied to all argument raised in plaintiffs' response. Blackmon continues to rely on its entire post-trial motion.

## CONCLUSION

For the foregoing reasons, defendants JESSE BLACKMON and TRANSPORT CARRIERS, INC., move for the entry of an Order vacating the verdict and judgment and (a)

1091312.1

granting judgment as a matter of law in their favor and against all plaintiffs; alternatively (b) granting a new trial as to liability and damages regarding all claims; (c)granting a new trial on damages only regarding all claims; (d) granting remittiturs reducing the judgments entered for plaintiffs to the following amounts:  Crystal Colon (wrongful death) — $2,550.000; Crystal Colon (survival) — $50,000; Stephanie Caletz — $75,000; Mario Caletz — $75,000; Brandon Caletz — $225,000; Joel Caletz — $25,000; Shane Evans — $1,250,000; Shannon Evans — $250,000; and (e) granting such other and further relief as this Court deems just.

Respectfully submitted,

PATTON & RYAN LLC                          CLAUSEN MILLER P.C.

By:    s/John W. Patton, Jr.              By:    s/Paul V. Esposito
       John W. Patton, Jr.                       Paul V. Esposito

Paula M. Carstensen
Paul V. Esposito
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, IL  60603-1098
Telephone:  (312) 855-1010
Fax (312) 606-7777

John W. Patton, Jr.
Kevin J. Rose
PATTON & RYAN LLC
One IBM Plaza
Suite 2900
Chicago, IL  60611
Telephone:  (312) 261-5160
Fax:  (312) 261-5161
*Attorneys for Defendants Jesse Blackmon and
        Transport Carriers, Inc.*

1091312.1