**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| STEPHANIE CALETZ, as Special Administrator of the Estate of CRYSTAL COLON, a minor, Deceased; STEPHANIE CALETZ, Individually; MARIO CALETZ, Individually; STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of BRANDON CALETZ, a minor; and STEPHANIE CALETZ and MARIO CALETZ, as parents and next friends of JOEL CALETZ, a minor, SHANE EVANS and SHANNON EVANS, | ) ) ) ) ) ) ) ) ) ) ) ) | 99 C 8146 Consolidated with 03 C 318 Hon. Michael T. Mason |
| Plaintiffs, | ) | |
| v. | ) ) | |
| JESSE BLACKMON; ROBERT LACHOWSKI; TRANSPORT CARRIERS, INC.; and AMERICAN SHIPPING & PACKING, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

This matter is before the Court on defendants Jesse Blackmon ("Blackmon") and Transport Carriers, Inc.'s ("TCI") post-trial motion. Defendants filed a consolidated post-trial motion that includes: a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b); a motion for a new trial on all issues pursuant to Rule 59(a); a motion for a new trial on damages pursuant to Rule 59(a); a motion for remittitur; and a motion to amend the judgment pursuant to Rule 59(e). For the reasons set forth below, defendants' consolidated post-trial motion is denied in its entirety.

**BACKGROUND**

This diversity action arises out of a multi-vehicle accident that occurred on July 1, 1999 along the Chicago Skyway northbound off-ramp leading to the Dan Ryan

Expressway.  Mario Caletz and Stephanie Caletz, individually, and as Special

Administrator of the Estate of Crystal Colon, and as parents and next friends of Brandon

Caletz and Joel Caletz ("the Caletz plaintiffs"), filed a lawsuit against defendants

Blackmon and TCI and defendants Robert Lachowski ("Lachowski") and American

Shipping & Packing, Inc. ("ASP").  The Caletz plaintiffs alleged that they were injured

and that Crystal Colon died as a result of the negligence and willful and wanton conduct

of defendants Blackmon and TCI.  They also alleged that they were injured and that

Crystal Colon died as a result of the negligence of Lachowski and ASP.

Shane Evans and Shannon Evans ("the Evans plaintiffs") filed a separate lawsuit

arising out of the same accident.  Shane Evans alleged that he was injured as a result

of the negligence of defendants Blackmon, TCI, Lachowski and ASP.  Shannon Evans,

Shane's wife, brought a loss of consortium claim.  The two cases were consolidated and

the matter proceeded to a jury trial that commenced on August 21, 2006.

During the trial, a number of witnesses gave varying accounts of how the

accident occurred.  Based on the testimony at trial, it appears that on July 1, 1999, at

approximately 5:30 AM, on the Skyway's northbound off-ramp leading to the Dan Ryan

Expressway, Blackmon lost control of the tractor he was driving on behalf of TCI.

Blackmon's tractor was not pulling a trailer at the time of the accident.  Blackmon

testified that where the two-lane off-ramp merged into one lane, he was cut off by a

pickup truck.  He turned his wheel to the right to avoid hitting the pickup truck and struck

the right guardrail.  After trying to straighten out, Blackmon said he ended up on the left

side of the road with his front end up against the left curb.  Other witnesses testified that

Blackmon lost control of the tractor, hit the right guardrail and then hit the left guardrail.

Blackmon's tractor ended up perpendicular to the roadway, with his front end flush with left guardrail. Even Blackmon agreed that when he came to rest, the rear of his tractor was obstructing a portion of the lane of traffic.

When Blackmon lost control, Mario Caletz was driving behind him in a minivan. Lachowski, who was driving a furniture truck on behalf of ASP, was behind the Caletz's. Mario Caletz slowed down to avoid hitting Blackmon and pumped his breaks to let people behind him know what was happening. Lachowski applied his breaks but could not slow down in time. He struck the Caletz's and the rear left tires of Blackmon's tractor. At some point, Blackmon was ejected from his tractor onto the grass beside the Dan Ryan Expressway. Blackmon claimed he was ejected when Lachowski struck him. Other witnesses testified that Blackmon was ejected when he struck the left guardrail.

Blackmon testified that as much as 15-20 seconds passed between the time he came to rest and the time Lachowski hit his tractor and the Caletz minivan. Other witnesses, including Bryan Eliott and Mark Lichte, testified that Lachowski hit Blackmon and the Caletz's only 5 or 6 seconds after Blackmon lost control of his tractor.

The accident occurred just before dawn, while it was raining or misty. Visibility was poor and the roadway was wet and slippery. Blackmon hit the right guardrail just after coming out of a curve, where two lanes merged into one. Blackmon was an experienced professional truck driver who testified that he was familiar with the area where the accident occurred. Blackmon also testified that he did not believe that hazardous conditions existed at the time of the accident.

Just prior to the Blackmon/Lachowski/Caletz accident, Shane Evans had been in an unrelated fender bender and he had pulled over to the right shoulder of the off-ramp.

3

The Evans vehicle was located a few car lengths down the ramp.  When Blackmon lost control of his tractor, Shane Evans and the passengers in his car attempted to get out of their vehicle and jump over the right guardrail to safety.  However, the impact between Lachowski, Blackmon and the Caletz's pushed all of the vehicles forward.  Lachowski sideswiped the left side of Evans' vehicle as he came to a stop.  Shane Evans was not able to get out of his car in time.  Ultimately, Lachowski's furniture truck pinned Shane Evans between his vehicle and the right guardrail.

As a result of the multi-vehicle accident, Crystal Colon, Stephanie Caletz's nine year-old daughter, died.  Brandon Caletz, Joel Caletz and Shane Evans all sustained serious personal injuries.  Mario Caletz and Stephanie Caletz sustained less serious personal injuries.

After a seven-day trial, the jury returned a verdict in favor of all plaintiffs and against defendants Blackmon, TCI, Lachowski and ASP in the amount of $15,443,093.80.  The jury found that Blackmon and TCI were 25 percent at fault and Lachowski and ASP were 75 percent at fault.

**ANALYSIS**

**I.      Motion for Judgment as a Matter of Law**

Blackmon and TCI ask this Court to enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  They argue that even assuming there was evidence of Blackmon's negligence, that negligence merely provided a condition for the accident and was not a proximate cause of the accident.  Blackmon and TCI also argue that there was no evidence that Blackmon was guilty of willful and wanton misconduct.

### A.     Legal Standard

While Illinois provides the substantive rules for this diversity case, federal law governs our consideration of a motion for judgment as a matter of law under Rule 50(b). *3M v. Pribyl*, 259 F.3d 587, 595 (7th Cir. 2001); *see also, Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 335 (7th Cir. 1994). When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see* Fed.R.Civ.P. 50(b). Instead, the Court views the evidence and makes all reasonable inferences in the light most favorable to the party against whom the motion is directed. *See Reeves*, 530 U.S. at 150-51; *Erickson v. Wisconsin Dep't Corrections*, 469 F.3d 600, 601 (7th Cir. 2006). "[T]he question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003). In other words, the Court will overturn the jury's verdict only if no reasonable juror could have found in favor of the plaintiffs. *See Erickson*, 469 F.3d at 601. "This is obviously a difficult standard to meet." *Waite v. Board of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005).

### B.     Proximate Cause

Blackmon and TCI argue that assuming Blackmon lost control of his tractor and negligently blocked a portion of the lane of traffic, that conduct merely created a condition for the accident but was not a proximate cause of the accident. Blackmon and TCI also contend that it was not reasonably foreseeable that Lachowski would drive too

fast around a blind curve, particularly when he should have expected stopped cars on the Skyway off-ramp.

Under Illinois law, proximate cause has two requirements: cause in fact and legal cause. *See Springfield Bank and Trust v. Galman*, 188 Ill. 2d 252, 256, 720 N.E.2d 1068, 1071 (1999); *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992); *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 549, 836 N.E.2d 640, 651,(1st Dist. 2005). Cause in fact is proven by showing that the defendant's action was a material element and a substantial factor in bringing about the plaintiff's injury. *Galman*, 188 Ill. 2d at 257, 720 N.E.2d at 1071. Legal cause "is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Lee*, 152 Ill. 2d at 456, 605 N.E.2d at 503 (quoting *Masotti v. Console*, 195 Ill. App. 3d 838, 845, 552 N.E.2d 1292, 142 Ill. Dec. 551 (1990)).

In *Galman*, the Supreme Court noted that "Illinois courts draw a distinction between a condition and a cause." *Galman*, 188 Ill. 2d at 257. The court further stated:

> Indeed if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Briske v. Village of Burnham,* 379 Ill. 193, 199, 39 N.E.2d 976 (1942); *Merlo v. Public Service Co.*, 381 Ill. 300, 316, 45 N.E.2d 665 (1942); *Thompson v. County of Cook,* 154 Ill. 2d 374, 383, 609 N.E.2d 290 (1993). The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence. *Merlo*, 381 Ill. at 317.

The Supreme Court also noted that the foregoing principles are consistent with

the law as set forth in *Lee*. *Galman*, 188 Ill. 2d at 258-59, 720 N.E.2d at 1072. In particular, the court stated:

> Although *Briske*, *Merlo*, and *Thompson* clearly employ a vocabulary different from that employed in *Lee*, all of these cases ask the same question: Was the defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct? While *Lee* sets forth this principle in general terms, *Briske*, *Merlo*, and *Thompson* address a particular subset of cases, namely, those in which the plaintiff's injury results not from the defendant's negligence directly but from the subsequent, independent act of a third person. Thus, when *Briske*, *Merlo*, and *Thompson* ask whether the defendant's conduct was a cause of the injury or simply furnished a condition by which the injury was made possible, they are in effect asking whether the defendant's conduct was a material and substantial element in bringing about the injury. Similarly, when *Briske*, *Merlo*, and *Thompson* ask whether the defendant might have reasonably anticipated the intervening efficient cause as a natural and probable result of his or her own negligence, they are in effect asking whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct. Far from conflicting, *Briske*, *Merlo*, *Thompson*, and *Lee* uniformly embrace the traditional proximate cause test that has governed Illinois for the better part of this century.

Thus, in cases where the subsequent negligent act of a third party is claimed to have directly caused plaintiff's injury, the determination of whether a party that committed some earlier negligent act can be held liable turns on whether that party's conduct "was a material and substantial element in bringing about the injury" and whether "the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct." *Galman*, 188 Ill. 2d at 259, 720 N.E.2d at 1072.

With that standard in place, we turn to the facts of this case. The accident

occurred on the Skyway off-ramp leading to the Dan Ryan Expressway.  Several witnesses testified that it was very early in the morning and that there was poor visibility due to rain or mist.  The roadway was wet and the area where Blackmon lost control of his tractor was just after a curve, where two lanes merged into one.  The speed limit on the off-ramp was 45 mph.  Blackmon testified that he was driving 45 mph (or just under 45 mph) as he proceeded down the ramp.  Blackmon lost control of his vehicle, struck the right guardrail, then hit the left guardrail and came to rest perpendicular to the roadway.  As a result, his tractor was blocking a portion of the lane of traffic. Blackmon's conduct forced traffic behind him, including the Caletz's and Lachowski, to slow down in an attempt to avoid hitting him.  Lachowski applied his breaks but was unable slow down in time.  His furniture truck struck the Caletz minivan, Blackmon's tractor and the Evans vehicle.  Blackmon testified that 15-20 seconds passed between the time he lost control of his tractor and the time Lachowski struck the Caletz minivan. Mark Lichte and Bryan Elliot testified that it was only 5 or 6 seconds.

Based on these facts, this Court concludes that a reasonable jury could have found that Blackmon's failure to control his tractor and obstruction of the roadway was a material and substantial element in bringing about plaintiffs' injuries.  If Blackmon's tractor was not obstructing a portion of the roadway, the Caletz's and Lachowski could have proceeded down the ramp without incident.  Indeed, Blackmon's conduct set the stage for the multi-vehicle accident that followed seconds later.  *See Roeseke v. Pryor*, 152 Ill. App. 3d 771, 779, 504 N.E.2d 927, 932 (1st Dist 1987).

Furthermore, a reasonable jury could have found that Lachowski's failure to slow down in time to avoid the accident was foreseeable to Blackmon, or something a

reasonable person would see as a likely result of Blackmon's conduct. Because the accident occurred just after a curve, where lanes merged on an off-ramp with a 45 mph speed limit, early in the morning, and in rainy or misty conditions, we cannot conclude, as a matter of law, that Lachowski's conduct was so unforeseeable that Blackmon should be released from all responsibility for plaintiffs' injuries. *Roeseke*, 152 Ill. App. 3d at 779, 504 N.E.2d at 932 (noting that where defendant's initial collision "set the stage for the multiple-vehicle pileup that followed," and where the accident occurred at night on a highway with a 55 mph speed limit, it was foreseeable that other vehicles would become involved in the mishap); *see also, Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 58, 669 N.E.2d 608 (1st Dist. 1996).

Based on the foregoing, this Court finds that there was a sufficient amount of evidence from which the jury could reasonably derive its verdict. Therefore, Blackmon and TCI's motion for judgment as a matter of law with respect to proximate cause is denied.

## C. Willful and Wanton Misconduct

Next, Blackmon and TCI argue that they are entitled to judgment as a matter of law because there was no evidence that Blackmon was guilty of willful and wanton misconduct. The Illinois Supreme Court has defined willful and wanton misconduct as follows:

> A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

*American Nat'l Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285, 735 N.E.2d 551, 557, 248 Ill. Dec. 900 (2000) (quoting *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 273, 641 N.E.2d 402, 405, 204 Ill. Dec. 178 (1994)); *see also*, Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1993) (stating, "when I use the expression 'willful and wanton misconduct,' I mean a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.").

In *Ziarko*, the Illinois Supreme Court described willful and wanton conduct as a hybrid between negligent and intentionally tortious behavior. *Ziarko*, 161 Ill. 2d at 275, 641 N.E.2d at 406. The court observed that there is a "thin line" between simple negligence and willful and wanton acts. *Id.* "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.*

Here, Blackmon lost control of his tractor in an area where he was coming out of a curve and two lanes merged into one. At the time of the accident, he was driving approximately 45 mph. The road was wet and visibility was poor. Blackmon was an experienced professional semi-truck driver who knew how to handle the vehicle he was driving. Blackmon also testified that he was familiar with the area where the accident occurred. Officers Patrick O'Flaherty, Keith Lutz, and Edward Goliak testified that Blackmon was driving too fast for conditions. Despite Blackmon's familiarity with the area, his speed, the driving conditions and the configuration of the roadway, Blackmon

testified that he did not believe that hazardous conditions existed on the roadway that day.  Instead, Blackmon maintained that he lost control of his tractor because someone cut him off.

Once again, we will overturn the jury's verdict only if no reasonable juror could have found in favor of the plaintiffs.  *Erickson*, 469 F.3d at 601.  Based on the evidence presented at trial, a reasonable jury could have found that Blackmon's failure to reduce his speed in light of the attending circumstances (*i.e.*, the poor visibility, wet pavement, merging lanes, his familiarity with the area and his professional truck driving experience) constituted a reckless disregard for the safety of others.  *See Bartolucci v. Falleti*, 382 Ill. 168, 175, 46 N.E.2d 980, 983 (1943) (recognizing that while speed alone is insufficient to constitute willful and wanton misconduct, the rate of speed and the attending circumstances must be taken into consideration);  *Hatfield v. Noble*, 41 Ill. App. 2d 112, 119, 190 N.E.2d 391, 394 (2nd Dist. 1963) (finding that defendant's conduct could fairly be interpreted as wilful and wanton misconduct where defendant, who was acquainted with the highway, was driving at an excessive speed on a curved road on a dark, misty, rainy night).  Indeed, because Blackmon failed to reduce his speed despite his experience as a truck driver, his familiarity with the area and the conditions at the time of the accident, a reasonable jury could have found that Blackmon recognized impending danger but failed to exercise ordinary care to prevent it.  Alternatively, because Blackmon testified that despite all of the attending circumstances, he did not believe that hazardous conditions existed on the roadway that day, a reasonable jury could have found that Blackmon failed to discover the danger through recklessness or carelessness when it could have been discovered by the

exercise of ordinary care.

After viewing the evidence presented at trial and making all reasonable inferences in the light most favorable to the plaintiffs, this Court finds that there was a sufficient amount of evidence from which the jury could reasonably derive its verdict. Accordingly, Blackmon and TCI's motion for judgment as a matter of law with respect to willful and wanton misconduct is denied.

## II.     Motion for a New Trial on All Issues

### A.     Legal Standard

A federal court sitting in diversity applies federal standards to a motion for a new trial. *McClain v. Owens-Corning Fiberglas Corp.*, 139 F.3d 1124, 1126 (7th Cir. 1998). A district court may grant a new trial if it finds the verdict is against the manifest weight of the evidence or if prejudicial error occurred. *Id.*; *Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 480 (7th Cir. 2000). To meet this standard, Blackmon and TCI must demonstrate that no rational jury could have rendered a verdict against them. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (citing *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)). The Court will sustain the verdict where a "reasonable basis" exists in the record to support the verdict. *Id.* When a motion for a new trial is based on an error of law, the moving party must show that the error was substantial enough to deny it a fair trial. *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir. 1986).

### B.     Proximate Cause and Willful and Wanton Misconduct

Blackmon and TCI incorporated the proximate cause and willful and wanton

misconduct arguments set forth in the motion for judgment as a matter of law into their motion for a new trial. Defendants contend that they are entitled to a new trial because the verdicts and judgments in favor of the plaintiffs are contrary to law and against the manifest weight of the evidence. As discussed above, this Court found that there was a sufficient amount of proximate cause and willful and wanton evidence from which the jury could reasonably derive its verdict. For the same reasons, this Court finds that a "reasonable basis" exists in the record to support the verdict.

### C.    Special Interrogatories

Blackmon and TCI contend that this Court erred in refusing to give the jury their special interrogatories on negligence and willful and wanton misconduct. In particular, defendants claim that these special interrogatories were necessary to determine whether the jury's verdict for the Caletz plaintiffs and against Blackmon was based on negligence or willful and wanton misconduct. As an initial matter, we agree with plaintiffs that the special interrogatories submitted by Blackmon and TCI were untimely. Pursuant to a scheduling order, this Court required all jury instructions and verdict forms to be submitted well in advance of the trial. Blackmon and TCI obviously knew about the Caletz's willful and wanton claim against them when they submitted their jury instructions on July 12, 2006. However, Blackmon and TCI did not file their special interrogatories until August 28, 2006, the day closing arguments were supposed to proceed. Furthermore, they filed the special interrogatories while the parties were in court that morning and they failed to provide plaintiffs with a copy of their late filing.[1]

---

[1] The Court notes that the late filing of the special interrogatories is just one example of defendants' repeated failure to comply with deadlines set by this Court. For instance, we

Nevertheless, even if the special interrogatories were timely, this Court still would not have allowed them. District courts have broad discretion under Federal Rule of Civil Procedure 49(b) to submit special interrogatories to juries. *Cruz v. Town of Cicero*, 275 F.3d 579 (7th Cir. 2001). After reviewing the proposed special interrogatories, this Court determined that they were unnecessary. Because no punitive damages were sought, we found no reason to clarify whether the jury found Blackmon's conduct to be negligent or willful and wanton. We stand by that determination.

Blackmon and TCI argue that the willful and wanton claim infected the Evans' verdicts because the jury may have increased Blackmon's share of fault from a much smaller percentage to 25% based on a determination that Blackmon was guilty of willful and wanton misconduct. As a result, Blackmon and TCI became jointly and severally liable to both sets of plaintiffs. Defendants' infection theory is completely speculative. Furthermore, as discussed above, there was more than enough evidence of willful and wanton misconduct to submit that claim to the jury. Even if the jury found that Blackmon's conduct only consituted negligence, the jury still would have considered the willful and wanton claim. Therefore, it is unclear how the special interrogatories would have prevented the alleged jury infection.

In short, defendants have failed to demonstrate prejudicial error simply because this Court refused to submit their special interrogatories.

### D. Jury Instructions Nos. 30 and 31

---

received an entire new set of jury instructions the morning the case was supposed to go to the jury. As a result, closing arguments were postponed until the following morning to allow the Court and the plaintiffs time to review defendants' new jury instructions.

Next, Blackmon and TCI argue that the Court erred by denying Blackmon's proposed jury instruction no. 30 (or alternatively, no. 31). Defendants' proposed instruction no. 30 provided:

> If you find that a defendant's negligence or willful and wanton misconduct was 25 percent or more of the cause of a plaintiff's injuries, then that plaintiff may collect the entire amount of his or her judgment from that defendant, even though another defendant may have also been negligent. This is known as joint and several liability.
>
> However, if a defendant's negligence or willful and wanton misconduct was less than 25 percent of the cause of a plaintiff's injuries, then that plaintiff may only collect from that defendant the actual percentage of damages corresponding to that defendant's percentage of negligence or willful and wanton misconduct. This is known as several liability only.
>
> A defendant found to be negligent or guilty of willful or wanton misconduct will be jointly and severally liable for the full amount of a plaintiff's past and future medical and medically related expenses, regardless of that defendant's percentage of negligence or willful and wanton misconduct.[2]

Blackmon and TCI argue that the jury should have been advised of the legal effect of an allocation of fault to the multiple defendants. In particular, defendants contend that by refusing this instruction, the Court deprived the jury of important information and prevented Blackmon and TCI from explaining to the jury why plaintiffs treated Blackmon's conduct as so much worse than Lachowski's conduct.[3]

Blackmon and TCI concede that neither the Seventh Circuit nor Illinois courts

---

[2] Proposed instruction no. 31 was identical to instruction no. 30 except that the "willful and wanton misconduct" language was removed.

[3] In their reply brief, defendants also argue that the failure to give this instruction constitutes an equal protection violation. However, arguments raised for the first time in a reply brief are waived. *Waldock v. M.J. Select Global, Ltd.*, 2005 U.S. Dist. LEXIS 26790, *32 (N.D. Ill. 2005) (citing *Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003)).

require a joint and several liability instruction. In fact, defendants have not cited a single Seventh Circuit or Illinois decision where the court required a jury instruction on the effect of joint and several liability.

Instead, both parties rely on out-of-circuit and out-of-state case law to support their respective positions. Defendants rely on case law from Hawaii, Montana, Wyoming and Idaho to support their contention that it is proper to explain to a jury the legal effect of an allocation of defendants' fault. *See Kaeo v. Davis*, 719 P.2d 387, 394-96 (Haw. 1986); *DeCelles v. State*, 795 P.2d 419, 420-422 (Mont. 1990); *Coryell v. Pinedale*, 745 P.2d 883, 884-86 (Wyo. 1987); *Luna v. Shockey Sheet Metal & Welding Co.*, 743 P.2d 61, 63-65 (Idaho 1987). Plaintiffs rely on case law from New Jersey, Pennsylvania and South Carolina to support their contention that an ultimate outcome instruction explaining joint and several liability is inappropriate. *See Brodsky v. Grinnell Haulers, Inc.*, 853 A.2d 940, 943 (N.J. 2004); *Dranzo v. Winterhalter*, 577 A.2d 1349, 1356 (Pa. Super. Ct. 1990); *Fernanders v. Marks Constr.*, 499 S.E.2d 509, 511 (S.C. Ct. App. 1998).

We are not bound by these decisions. *See Block v. Rockford Pub. Sch. Dist. # 205*, 2001 U.S. Dist. LEXIS 16339, *4 (N.D. Ill. 2001). However, this Court finds the reasoning set forth in *Dranzo* to be persuasive. 577 A.2d at 1356. There, the court found that "the collectability or uncollectability of a judgment, the operation of joint and several liability, is simply not relevant to the jury's consideration of whether the defendants were causally liable and in what percent." *Id.* This Court agrees.

Moreover, while the Seventh Circuit and the Supreme Court of Illinois have yet to address this specific issue, a recent decision from the Appellate Court of Illinois, First

District, is instructive. *See Mikolajczyk v. Ford Motor Co.*, 859 N.E.2d 201, 2006 Ill.

App. LEXIS 1057, 307 Ill. Dec. 201 (1st Dist. 2006).[4] In *Mikolajczyk*, the plaintiff,

individually and as special administrator of the estate of her deceased husband James

Mikolajczyk ("James"), brought suit alleging strict products liability for a defective design

against defendants Ford Motor Company and Mazda Motor Corporation ("the Ford

defendants") and negligence against defendant William D. Timberlake ("Timberlake").

*Mikolajczyk*, 859 N.E.2d at 207. James died when his Ford Escort was hit from behind

by Timberlake's car. *Id.* at 208. Summary judgment was entered against Timberlake

and the case proceeded to a jury trial on the strict products liability claim. *Id.* The jury

found Timberlake 60% responsible for causing James' death and the Ford defendants

40% responsible. *Id.*

The trial court instructed the jury that Timberlake had been found responsible for

James' death. *Id.* at 221. It further instructed the jury that if it found that the Ford

defendants were also legally responsible for proximately causing James' death, then it

must apportion the damages by determining the relative degree of responsibility of the

Ford defendants and Timberlake. *Id.* The court also instructed the jury: "on your verdict

form you will state the percentage of responsibility of each of these defendants, treating

Mazda Motor Corporation and Ford Motor Company as a single defendant." *Id.*

However, the trial court refused to instruct the jury, as requested by defendants,

> that if it attributed to either defendants or Timberlake "less than
> 25% of the responsibility for proximately causing the death,

---

[4] We note that defendants' post-trial motion was fully briefed before this decision was
published. *Mikolajczyk* was decided on November 22, 2006 and released for publication on
January 5, 2007.

that defendant will be required to pay only the percentage attributed that defendant of the total damage award" and that if it attributed to either defendants or Timberlake "25% or more of the total responsibility proximately causing the death," that defendant would be held jointly and severally liable, meaning that that defendant "could be required to pay 100% of the damages awarded, even if the percentage you attribute to that defendant is less than 100%."

The Ford defendants argued on appeal that the trial court committed prejudicial error in failing to tender the proposed apportionment instruction they had submitted. *Id.* The Appellate Court remarked that the defendants failed to cite "any cases that stand for the proposition that their requested instruction on the effect of the law of joint and several liability was required." *Id.* at 222. Furthermore, the court noted that in her concurrence in *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 104, 783 N.E.2d 1024, 270 Ill. Dec. 724 (2002) (McMorrow, C.J., specially concurring), Chief Justice McMorrow observed that in cases such as this, "the jury is typically not instructed on the effect of joint and several liability." *Id.* Accordingly, the *Mikolajczyk* court found that the given instructions adequately outlined the procedure for apportioning fault and the trial court did not err in denying the Ford defendants' requested instruction. *Id.*

Because a jury instruction on the effect of the law of joint and several liability is not required under Seventh Circuit or Illinois law, this Court concludes that defendants have failed to establish prejudicial error. *Mikolajczyk*, 859 N.E.2d at 222.

### E.    Counsel's Suggestion of A Specific Non-economic Award

Defendants also argue that the Court abused its discretion by denying their motion to bar suggestions of lump sum non-economic awards during closing argument. In the motion to bar, Blackmon and TCI asked the Court to prohibit plaintiffs from

18

suggesting, during closing argument, a lump sum amount of non-economic damages. This Court denied the motion to bar but we issued a cautionary instruction to the jury.[5]

In the post-trial motion, defendants rely on *Waldorf v. Shuta*, 896 F.2d 723, 744 (3d Cir. 1990) and *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996), to support their claim of prejudicial error.[6]  In *Waldorf*, the Third Circuit held that plaintiff's counsel's argument, which requested a specific amount of damages for pain and suffering, was improper and constituted reversible error.  896 F.2d at 744.  The court said that "a jury trial should be an appeal to the rational instincts of a jury rather than a masked attempt to 'import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible to evaluation on any such basis.'" *Id.* at 744 (quoting *Botta v. Brunner*, 26 N.J. 82, 100, 138 A.2d 713, 723 (1958)).

In *Consorti*, the court emphasized that specifying target amounts for the jury to award is disfavored.  72 F.3d at 1016.  However, the *Consorti* court also acknowledged that the Second Circuit has refused to adopt a per se rule about the propriety of suggested damage amounts.  *Id.*  Once again, we note that this Court is not bound by out-of-circuit decisions.  *See Block v. Rockford Pub. Sch. Dist. # 205*, 2001 U.S. Dist. LEXIS 16339, *4 (N.D. Ill. 2001).

---

[5] Plaintiffs argue that defendants' motion to bar was untimely.  This Court agrees.  The motion to bar was submitted well after this Court required the parties to file their motions *in limine*.  However, because this Court would have denied the motion to bar even if it was timely, we will address it here.

[6] The propriety of counsel's argument to the jury is a matter to be resolved by reference to federal law.  *Waldron v. Hardwick*, 406 F.2d 86, 88 (7th Cir. 1969).

Moreover, the Third Circuit's decision in *Waldorf* does not conform with Seventh Circuit law. *See Waldron v. Hardwick*, 406 F.2d 86, 88-89 (7th Cir. 1969). In *Waldron*, plaintiff's counsel made a per diem argument, suggesting that the jury award a certain dollar amount per day for pain and suffering. *Id.* at 88. The trial court did not advise the jury that the argument could be disregarded. *Id.* The Seventh Circuit held that such an argument "is permissible if made within limitations which the trial judge to insure fairness may impose such as the giving of a suitable cautionary instruction." *Id.* at 89. The court further found that counsel's per diem argument did not constitute reversible error even in the absence of a cautionary instruction. *Id.* The *Waldron* court stated, "in light of the undisputed fairness of the jury's verdict, we hold that in the circumstances whatever error occurred was so harmless as to not require reversal." *Id.* at 89-90.

Therefore, under *Waldron*, we find that if a suitable cautionary instruction is given, plaintiff's counsel is free to suggest a lump sum non-economic award during closing argument. *Waldron*, 406 F.2d at 88-89; *see also, Whiting v. Westray*, 294 F.3d 943, 947 (7th Cir. 2002) (the Seventh Circuit affirmed a verdict where plaintiff's counsel had requested an award of $14 million in non-economic damages, recognizing that "attorneys often ask for the stars while only hoping for the moon.").

Blackmon and TCI argue that *Waldron* is distinguishable because it dealt with per diem closing arguments. This Court disagrees. In *Evoy v. CRST Van Expedited, Inc.*, 430 F. Supp. 2d 775, 782-83 (N.D. Ill. 2006), the court relied on *Waldron* when it found that there was no prejudicial error in allowing plaintiff's attorney to suggest a specific non-economic damage award to the jury. The *Evoy* court observed:

> Though *Waldron* and *Waldorf* seem to indicate a circuit split on

> the propriety of suggesting awards for non-economic damages, this Court is obliged to follow Seventh Circuit precedent. In light of the cautionary instruction given to the jury, the Court is convinced that [plaintiff's] closing argument did not unfairly prejudice [the defendant].

The *Evoy* court gave the following cautionary instruction: "any figures proposed by counsel in their arguments are not evidence as to the amounts of damages you should award, but rather constitute arguments, which you are free to disregard in your deliberations." *Evoy*, 430 F. Supp. 2d at 782, n.2. This Court gave an identical cautionary instruction. As a result, we find that plaintiffs' closing argument did not unfairly prejudice the defendants.

Defendants also argue that the Court erred in refusing to require plaintiffs to disclose, in advance of close, the amount of non-economic damages plaintiffs intended to seek in order to review the suggested amount for excessiveness. Finally, Blackmon and TCI argue the Court should have required disclosure of the fee arrangements between plaintiffs and their respective counsel. However, defendants waived these arguments by failing to develop them and failing to cite any pertinent legal authority. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (stating that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *CFTC v. Tokheim*, 153 F.3d 474, 476 n. 3 (7th Cir. 1998); *Canal Barge Co. v. Commonwealth Edison Co.*, 2002 U.S. Dist. LEXIS 9844, *15 (N.D. Ill. 2002).

## F.    Officers' Testimony

Next, Blackmon and TCI argue that the Court abused its discretion by allowing Officers O'Flaherty, Goliak and Lutz to testify as to their opinions that Blackmon's

21

alleged fault was the cause of the accident. According to defendants, the Court should

not have allowed this testimony because none of the officers observed the accident or

performed an accident reconstruction. First, defendants waived this argument by failing

to develop it and failing to cite any legal authority. *Berkowitz*, 927 F.2d at 1384; *CFTC*

*v. Tokheim*, 153 F.3d at 476 n. 3; *Canal Barge Co.*, 2002 U.S. Dist. LEXIS 9844, *15.

Second, even if we considered the argument, defendants still failed to

demonstrate prejudicial error. None of the officers testified that Blackmon's alleged fault

was *the cause* of the accident. Instead, Officers O'Flaherty, Goliak and Lutz testified

that in their opinion, Blackmon was driving too fast for conditions at the time of the

accident. Additionally, Officers O'Flaherty and Goliak testified that the fact that

Blackmon was driving too fast for conditions contributed to causing the accident. This

testimony was based on the officers' investigation as well as their experience and

training. Accordingly, there was no prejudicial error in admitting the officers' testimony.

> ### G.   Blackmon's Memory Problems

Blackmon and TCI contend that the Court abused its discretion by not allowing

Blackmon's counsel to question him about his memory problems. Once again, this

argument was presented in a cursory fashion without citation to any pertinent legal

authority. Therefore, defendants waived it. *Berkowitz*, 927 F.2d at 1384; *CFTC v.*

*Tokheim*, 153 F.3d at 476 n. 3; *Canal Barge Co.*, 2002 U.S. Dist. LEXIS 9844, *15.

Regardless, this argument fails because the Court did not prevent Blackmon's counsel

from questioning him about his memory problems. Nor did we preclude Blackmon from

stating what his injuries were. Rather, the Court prohibited Blackmon from testifying

about the cause of his memory problems because the testimony lacked foundation.

22

Indeed, there was no medical evidence or expert testimony presented to support Blackmon's claim that his memory problems were caused by the accident. Blackmon obviously was not competent to testify about the cause of his memory problems. Therefore, Blackmon's testimony as to the cause of his memory problems was properly excluded.

### H.    Dr. Kahana's Testimony

Next, Blackmon and TCI argue that the Court abused its discretion by allowing Dr. Kahana to testify about her examination of Brandon Caletz performed the day before she testified at trial. Defendants claim that the testimony about her findings was untimely under Rule 26(a). Dr. Kahana did not offer any specifics about the medical aspects of the examination. Instead, Dr. Kahana testified that during the examination, Brandon Caletz told her that he was in special classes but doing well. She further testified that Stephanie Caletz told her that Brandon was on medication for Attention Deficit Disorder and that prior to taking the medication, he had difficulty in school, mood swings and problems with impulse control. We find no prejudice in allowing Dr. Kahana to offer such testimony because Stephanie Caletz testified about these same issues during direct examination. Moreover, Dr. Kahana was not permitted to testify about any opinions she reached based on the recent examination. This Court sustained each objection by defense counsel when plaintiffs' counsel attempted to elicit those opinions. Accordingly, defendants have failed to demonstrate prejudicial error.

### I.    Closing Argument

Blackmon and TCI also argue that the Court abused its discretion by restricting defendants' closing argument that Mario Caletz had given a statement to the police that

was inconsistent with the police report. Once again, defendants waived this argument by failing to develop it and failing to cite any legal authority. *Berkowitz*, 927 F.2d at 1384; *CFTC v. Tokheim*, 153 F.3d at 476 n. 3; *Canal Barge Co.*, 2002 U.S. Dist. LEXIS 9844, *15. Regardless, the argument is meritless. In his close, counsel for Blackmon and TCI stated that Mario Caletz was arguing with a police officer about what was contained in the police report. Plaintiffs' counsel objected to defense counsel's use of the word "arguing." No witness testified that Mario Caletz "argued" with a police officer about what was in the report. Rather, Mr. Caletz testified that he told the police officer that "he had it all wrong." Because there was no testimony that Mario Caletz "argued" with any police officer about what was in the report, the objection was properly sustained. Furthermore, defense counsel was permitted to and did argue during close that Mario Caletz told the police officer that he had the police report wrong. Based on the foregoing, there was no prejudicial error in sustaining plaintiffs' counsel's objection.

In sum, with respect to the proximate cause and willful and wanton misconduct issues, Blackmon and TCI failed to demonstrate that no rational jury could have rendered a verdict against them. With respect to the remaining issues, defendants failed to demonstrate prejudicial error much less show that the error was substantial enough to deny them a fair trial. Accordingly, Blackmon and TCI's motion for a new trial on all issues is denied. *King*, 447 F.3d at 534; *Perry*, 794 F.2d at 285.

### III. Motion for a New Trial as to Damages Only

#### A. Legal Standard

As stated above, a district court may grant a new trial if it finds the verdict against the manifest weight of the evidence or if prejudicial error occurred. *McClain*,

24

139 F.3d at 1126.

**B.    Emotional Distress Damages**

**1.    Pleading Emotional Distress**

Blackmon and TCI argue that plaintiffs were not entitled to awards for emotional distress (in addition to awards for pain and suffering) because they did not file claims for intentional or negligent infliction of emotional distress.  Notice pleading requires complaints to contain a "short and plain statement of the claim" sufficient to notify defendants of the allegations against them and enable them to file an answer.  Fed. R. Civ. P. 8(a); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).  It does not require a plaintiff to plead facts or legal theories.  *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (stating that "details of both fact and law come later").  Moreover, to recover for negligent infliction of emotional distress, direct victims only need to plead the elements of negligence.  *Corgan v. Muehling*, 143 Ill. 2d 296, 306, 574 N.E.2d 602, 158 Ill. Dec. 489 (1991);  *Majca v. Beekil*, 289 Ill. App. 3d 760, 767, 682 N.E.2d 253, 257 (1st Dist. 1997).  Here, the Caletz plaintiffs alleged a negligence claim against the defendants.  Accordingly, they satisfied our liberal notice pleading standard.

**2.    Evidence of Emotional Distress**

Next, defendants argue that there was no evidence to support the inclusion of an emotional distress element on the verdict forms.  In particular, defendants claim that there was no evidence that any Caletz plaintiff suffered emotional distress as a direct victim of Blackmon's conduct or as a bystander.

Under Illinois law, a plaintiff may recover emotional distress damages as a direct

victim of the defendant's negligence, as a bystander or both.  *See Jarka v. Yellow Cab Co.*, 265 Ill. App. 3d 366, 373-74, 637 N.E.2d 1096, 1102 (1st Dist. 1994); *Kapoulas v. Williams Ins. Agency*, 11 F.3d 1380, 1382 (7th Cir. 1993).  Prior to the Illinois Supreme Court's decision in *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 75 Ill. Dec. 211, 457 N.E.2d 1 (1983), Illinois courts were guided by the impact rule when determining whether direct victims and bystanders could recover damages for negligent infliction of emotional distress.  *Corgan*, 143 Ill. 2d at 303.  The impact rule allowed both direct victims and bystanders to recover damages, if they suffered: (1) emotional distress; and (2) "a contemporaneous physical injury or impact."  *Id.*

In *Rickey*, the Illinois Supreme Court disavowed the impact rule and adopted the zone-of-physical-danger rule for bystanders.  *Rickey*, 98 Ill. 2d at 555.  The *Rickey* court explained the zone-of-physical-danger rule as follows:

> [A] bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress.  This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact. The bystander, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence.

Therefore, after *Rickey*, while a bystander need not prove impact as a prerequisite to recovering emotional distress damages, he must demonstrate that he was in the zone of danger and that his emotional distress resulted from a fear for his own safety.  *Id.*

However, the zone-of-physical-danger rule only applies to bystanders.  *Corgan*, 143 Ill. 2d at 305 (stating that "the zone-of-physical-danger rule is patently inapplicable

to direct victims."). When a direct victim claims emotional distress, the impact rule still applies. *Kapoulas*, 11 F.3d at 1382, citing *Corgan v. Muehling*, 143 Ill. 2d 296, 574 N.E.2d 602, 604-05, 158 Ill. Dec. 489 (1991). Therefore, a direct victim must establish emotional distress and a contemporaneous physical injury or impact. *Corgan*, 143 Ill. 2d at 303.

In this case, there was ample evidence presented at trial demonstrating that each of the Caletz plaintiffs qualifies as a direct victim of Blackmon's negligence. Each suffered the physical impact of the multi-vehicle accident. Furthermore, each of the Caletz plaintiffs suffered personal injuries as a result of the accident. Stephanie Caletz and Mario Caletz testified about their own personal injuries. Stephanie also testified about the injuries suffered by Brandon and Joel Caletz. Additionally, plaintiffs presented testimony from treaters and medical records which detailed the injuries sustained by Crystal Colon, Brandon Caletz and Joel Caletz. Crystal suffered multiple serious injuries, which caused her death. Joel suffered a depressed skull fracture. Brandon suffered a subdural hematoma and a traumatic axonal injury resulting in brain damage. At the time of the accident, Brandon was nine months old, Joel was three years old and Crystal was nine years old.

Stephanie and Mario Caletz also testified about what they experienced immediately after the accident as well as their children's reaction to the accident. Stephanie testified that she screamed and closed her eyes after the first impact. She felt two more impacts following the first one. She also testified that she heard screams coming from her children. After the accident, Stephanie screamed when she saw Crystal between the seats of the van and told Mario to get her out. She testified that

27

she felt helpless as all of her children were calling for her because she could not get to them right away. Stephanie further testified that Brandon, who suffered brain damage, has experienced problems since the accident developing friends and controlling his impulses. Mario testified that he had difficulty getting his children out of the vehicle. He punched in the window of his van trying to get Brandon out. Mario also testified that when he saw Crystal sandwiched between the second and third rows of the van, she had a painful grimace on her face and she coughed up blood.

Based on this evidence, a rational jury could infer and award emotional distress damages in favor of the Caletz plaintiffs and against Blackmon and TCI. Indeed, this Court finds that a "reasonable basis" exists in the record to support an award for emotional distress damages to each of the Caletz plaintiffs as a direct victim of Blackmon's negligence.[7]

In a footnote in their motion for a new trial, defendants also argue that they are entitled to judgment as a matter of law pursuant to Rule 50(b) on the emotional distress claims because plaintiffs did not offer evidence as to these claims. For the same reasons as stated above, this argument is rejected. Plaintiffs clearly offered a legally sufficient amount of emotional distress evidence from which the jury could reasonably derive its verdict.

### 3. The Verdict Forms

Blackmon and TCI also contend that if the Caletz plaintiffs were entitled to

---

[7] There was no testimony that any of the Caletz plaintiffs suffered a physical injury or illness as a result of the emotional distress caused by Blackmon's negligence. Therefore, our finding is limited in the sense that a reasonable basis exists in the record to support the Caletz plaintiffs recovering emotional distress damages as direct victims rather than as bystanders.

recover emotional distress damages for injuries they suffered as direct victims, those damages fit within the element of "pain and suffering."  According to defendants, the law equates pain and suffering with the emotional distress damages of a direct victim. Therefore, defendants claim that the Caletz plaintiffs were not entitled to recover emotional distress damages in addition to the pain and suffering damages they recovered.  This Court disagrees.

The verdict forms given to the jury for the Caletz plaintiffs contained separate line items for pain and suffering and for emotional distress.  This makes sense because the evidence demonstrates that the Caletz plaintiffs suffered both physical injuries and emotional distress as a result of the accident.  Furthermore, plaintiffs have not cited a single case in Illinois or the Seventh Circuit where the court refused to allow separate line items for pain and suffering and emotional distress of a direct victim.  To the contrary, these types of itemized verdicts are appropriate under Illinois law.  *See Vojas v. K Mart Corp.*, 312 Ill. App. 3d 544, 454, 727 N.E.2d 397 (5th Dist. 2000) (jury returned an itemized verdict with separate awards for pain and suffering and emotional distress).

Additionally, when they submitted their proposed instructions and verdict forms and at the jury instruction conference, defendants objected to including a separate line item for emotional distress damages on the verdict form because: (1) plaintiffs had not pled a claim for emotional distress, and (2) there was no evidence of emotional distress. Defendants did not object to the separate line item for emotional distress based on their current argument that the law equates pain and suffering with the emotional distress damages of a direct victim.  Blackmon and TCI cannot now raise a new objection that

29

was never presented to this Court when we reviewed the jury instructions and verdict forms.

### 4.    The Emotional Distress Awards

Next, defendants argue that the jury's awards for the Caletz plaintiffs' emotional distress damages are excessive.[8]  Because Blackmon and TCI's liability is based on Illinois law, Illinois law governs the question of whether the evidence supports the award of damages.  *Id.*; *see also, Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 106 F.3d 1388, 1397 (7th Cir. 1997).  Therefore, we look "to Illinois law for the substantive standard of what evidence would satisfy proof of damages."  *McClain*, 139 F.3d at 1126; *see also, Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 436-37, 116 S. Ct. 2211, 2225, 135 L. Ed. 2d 659 (1996).

Under Illinois law, "absolute certainty concerning the amount of damage is not necessary to justify a recovery where the existence of damage is established."  *In re Application of Busse,* 124 Ill. App. 3d 433, 438-439 (1st Dist. 1984); *see also, Medcom*, 106 F.3d at 1398.  A damages award will not be subject to remittitur if it "falls within the flexible range of conclusions which can be reasonably supported by facts because the assessment of damages is primarily an issue of fact for jury determination."  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006).

Furthermore, in reviewing damages awards, "Illinois courts give great deference to the jury." *Naeem*, 444 F.3d at 612.  Under Illinois law, the jury's function is "to

---

[8] The jury awarded emotional distress damages as follows: Crystal Colon - $55,000; Stephanie Caletz - $3,500,000; Mario Caletz - $1,400,000; Brandon Caletz - $250,000; and Joel Caletz - $120,000.

consider the credibility of witnesses and to determine an appropriate award of damages." *Id.*, citing *Richardson v. Chapman*, 175 Ill. 2d 98, 114, 676 N.E.2d 621, 628, 221 Ill. Dec. 818 (1997). The Supreme Court of Illinois has stated that "an award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Richardson*, 175 Ill. 2d at 113, 676 N.E.2d at 628. In applying this standard, Illinois courts have "traditionally declined to make . . . comparisons [with amounts awarded in other cases] in determining whether a particular award is excessive." *Id.*

Here, the evidence showed that the Caletz plaintiffs were involved in a horrific multi-vehicle accident. Crystal Colon sustained serious injuries that ended her life. The surviving family members suffered personal and emotional injuries as a result of the accident. The jury considered the credibility of the witnesses and determined appropriate awards of damages for each of the Caletz plaintiffs. In light of the evidence presented at trial, this Court cannot conclude that the awards are so large that they shock the judicial conscience. Moreover, defendants have failed to demonstrate that the awards fall outside the range of fair and reasonable compensation or that they are the result of passion or prejudice. Accordingly, this Court finds that the awards to the Caletz plaintiffs are not excessive.

### C.     Wrongful Death Damages

Blackmon and TCI argue that the verdict in the wrongful death action is excessive as a matter of law because it includes damages for Robert Colon. Under the Wrongful Death Act, it is not proper to give the jury a verdict form that provides for

31

individual awards to each survivor. 740 ILCS 180/2; *see Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d 199, 205, 668 N.E.2d 8, 12 (1st Dist. 1996). Defendants claim that the verdict in this case does not reflect the amount of the award attributable to Robert Colon's pecuniary loss. This Court declined to submit defendants' special interrogatory, which asked whether Robert Colon was estranged from his daughter at the time of her death. According to defendants, they cannot properly analyze the verdict without an answer to the interrogatory and as a result, a new trial on wrongful death damages is necessary.

As Crystal's father, Robert Colon is entitled to a presumption of pecuniary injury based on the loss of his child's society. *Bullard v. Barnes*, 102 Ill. 2d 505, 517, 468 N.E.2d 1228 (1984). However, defendants may rebut that presumption by presenting evidence that the parent and the child were estranged. *Id.* Over defendants' objection, this Court instructed the jury that Robert Colon was one of the real parties in interest in the wrongful death lawsuit and that the law recognizes a presumption that a parent has sustained some substantial pecuniary loss by reason of the loss of a child's society. The Court also instructed the jury that the weight to be given that presumption was for them to decide from the evidence in the case.

Blackmon and TCI contend that these instructions were improper because Robert Colon was estranged from his daughter Crystal. Stephanie Caletz testified Robert Colon did not contribute financial support for Crystal, that he did not appear at paternity or child support hearings and that he did not show up to see Crystal on certain occasions when he promised to do so. However, Stephanie also testified that Robert Colon talked to his daughter a couple of times a year, he sent cards to her a couple of

times a year and they saw each other a couple of times a year while the Caletz family lived in Rochester, New York and he lived in Chicago, Illinois.  Stephanie further testified that Crystal saw her father more often during the last year of her life because they visited Stephanie's mother in Chicago more often that year.  Based on this evidence, we found that Robert Colon was not estranged from his daughter and that plaintiffs' proposed jury instructions were appropriate.  Furthermore, a reasonable jury certainly could have found that a relationship between Crystal and Robert Colon existed and that he was entitled to the presumption of a pecuniary injury based on the loss of Crystal's society.

Additionally, this Court is not persuaded by defendants' contention that they are entitled to a new trial on damages because we declined to submit their special interrogatory as to Robert Colon's estrangement.  As discussed above, the special interrogatories submitted by Blackmon and TCI were untimely.  Moreover, this Court found that the special interrogatory as to estrangement was unnecessary.  District courts have broad discretion under Federal Rule of Civil Procedure 49(b) to submit special interrogatories to juries.  *Cruz v. Town of Cicero*, 275 F.3d 579 (7th Cir. 2001).

Defendants also argue that the wrongful death verdict is excessive regarding the loss of society because neither Brandon Caletz nor Joel Caletz enjoy a presumption of pecuniary loss.  This Court instructed the jury that the brothers of the decedent were not entitled to such a presumption.  Blackmon and TCI claim that neither Brandon nor Joel testified as to their losses and the Caletz plaintiffs did not offer any evidence on this issue.  This Court disagrees.  While it is true that seven year-old Brandon and ten year-old Joel did not testify, Stephanie Caletz testified about their loss.  Her testimony

33

provided sufficient evidence to support a loss of society award for Brandon and Joel Caletz.

Finally, we cannot say that the wrongful death award is so large that it "shocks the conscience." *See Richardson*, 175 Ill. 2d at 113, 676 N.E.2d at 628. Accordingly, this Court rejects defendants' argument that the verdict in the wrongful death action is excessive.

### D. Non-Economic Awards to Shane and Shannon Evans

Defendants argue that the non-economic awards to Shane Evans ($3,480,000) and Shannon Evans ($1,025,000) are excessive. In particular, Blackmon and TCI argue that these awards are beyond the range of reasonableness for the type of injuries sustained by the Evans plaintiffs in light of the evidence. We disagree. The Evans plaintiffs presented evidence that Shane Evans sustained an extremely painful, disfiguring and permanent injury to his leg when he was crushed between his vehicle and the guardrail. The jury viewed graphic pictures of Shane's injured leg and Shane showed the jury his disfigured leg in its current state. Shane Evans also witnessed the accident as it was occurring and testified about his fear during the accident and the emotional aftermath. The jury also heard Shannon Evans describe how the accident and Shane's injuries affected her life, her husband's life and their marriage. Based on this evidence, we cannot conclude that the awards to the Evans plaintiffs are so large that they shock the judicial conscience. *See Richardson*, 175 Ill. 2d at 113, 676 N.E.2d at 628.

Furthermore, defendants have failed to demonstrate that the awards fall outside the range of fair and reasonable compensation or that they resulted from passion or

prejudice.  Defendants argue that the awards to the Evans plaintiffs are likely explained by the passion and prejudice brought to bear against Blackmon through the Caletz's wilfull and wanton misconduct claim.  Specifically, Blackmon and TCI contend that the prejudice resulting from that claim spilled into the Evans' verdicts.  As discussed above, this theory is speculative.  Moreover, this Court found that there was a sufficient amount of willful and wanton evidence from which the jury could reasonably derive its verdict.  Accordingly, defendants have failed to demonstrate that the Evans' awards were the result of prejudice or passion in light of the fact that the willful and wanton claim was properly submitted to the jury.

Next, Blackmon and TCI argue that the Evans plaintiffs' awards are excessive because the jury awarded excessive amounts to the Caletz plaintiffs.  However, this Court found that the awards to the Caletz plaintiffs are not excessive.  Consequently, this argument fails. Simply put, this Court finds that awards to the Evans plaintiffs are supported by the evidence and are not excessive.

In short, defendants have failed to demonstrate that the verdict was against the manifest weight of the evidence, that the awards were excessive or that prejudicial error occurred.  Accordingly, Blackmon and TCI's motion for a new trial as to damages only is denied.

## IV.    Motion for Remittitur

In support of this motion, Blackmon and TCI rely solely on the arguments they presented in their motion for a new trial as to damages only.  This Court already rejected those arguments.  Furthermore, we found that the jury's awards to the Caletz plaintiffs and the Evans plaintiffs are supported by the evidence and are not excessive.

Additionally, while defendants ask this Court to reduce the verdicts for each of the plaintiffs significantly, they offer no support or explanation for the numbers they suggest. For all of these reasons, defendants' motion for remittitur is denied. *See also, Naeem*, 444 F.3d at 611 (recognizing that a damages award will not be subject to remittitur if it "falls within the flexible range of conclusions which can be reasonably supported by facts.").

## V.     Motion for Judgment on the Counterclaims

When this Court entered the jury's verdict on September 1, 2006, we inadvertently omitted the jury's verdict on the counterclaims. That error was rectified by our September 21, 2006 Order. Accordingly, defendants' motion for judgment on the counterclaims is denied as moot.


## CONCLUSION

For the reasons set forth above, Blackmon and TCI's consolidated post-trial motion is denied in its entirety. It is so ordered.

ENTER:

**MICHAEL T. MASON**
**United Stated Magistrate Judge**


Dated:  March 6, 2007